THE STATE OF NEBRASKA, PLAINTIFF IN ERROR, V. DANIEL LYDICK, DEFENDANT IN ERROR.

1. **Liquor License not Assignable.** E. P. held a license from the city to retail malt, spirituous, and vinous liquors. He sold out his stock in trade, furniture, and fixtures to the defendant, and assigned his said license to him. *Held*, that such license so assigned to him was no defense to an indictment against defendant for selling such liquors "without first having obtained a license therefor."

2. **A License issued contrary to the statute** confers no authority to vend malt, spirituous, or vinous liquors. E. P. held a liquor license issued under the authority of the mayor and council of F. City. He sold out his saloon and assigned his license to the defendant, who petitioned the mayor and council to transfer the said license to him. The council thereupon ordered the said license to be transferred to the defendant. The city clerk thereupon issued an original license (in form) to the defendant, who proceeded to retail spirituous liquors under it, and was indicted therefor. *Held*, that such license was no defense to such indictment.

ERROR to the district court of Richardson county. Tried below before WEAVER, J.

*W. H. Morris,* district attorney, for the State.

No counsel for defendant.

COBB, J.

This case is brought to this court under the provisions of secs. 515, 516, criminal code [Comp. Stat., 741], by the district attorney of the first district, for the purpose of settling the law of the question or questions involved therein.

It appears from the agreed state of facts preserved in the bill of exceptions that: "1st. One Eli Plant, on May 1, 1880, received a liquor license for one year, in Falls City, a city of the second class, in Richardson Co. * * * * * 3d. August 2, 1880, defendant pur-

chased Plant's saloon and business, and on that day filed with the city clerk a petition, signed by himself only, asking for a transfer of the said license theretofore issued to Plant to himself. 4th. That said petition remained unacted upon until the sixteenth of August, when the council met pursuant to their adjournment of Aug. 2, and duly ordered the license of Eli Plant to be transferred to the defendant. 5th. That before the above proceedings the said city council had passed an ordinance declaring that no person should have a license to retail liquors unless he had complied with the requirements of the revised (?) statutes, and that upon payment of $5 a liquor license could be transferred if the city council so ordered. 6th. That the city clerk, acting under the order of the council as made intending to transfer the license of Eli Plant to defendant Daniel Lydick, issued to defendant a paper, which, on its face, purported to be a regularly issued license, but which the clerk intended, and the defendant understood was to be but a transfer of Eli Plant's license for its unexpired term. 7th. That the defendant never filed with the city clerk or any other authorized or designated party, any petition signed by ten freeholders, certified as required by law, or any other petition except the one filed by him Aug. 2, 1880, with the city clerk, requesting a transfer to defendant of Eli Plant's license for its unexpired term. 8th. That the defendant never paid to the city treasurer or any other person any sum whatever for license to sell liquors in Falls City, except the money which defendant paid to Eli Plant for the pro rata amount of his unexpired license. * * * * * 10th. That the grand jury at March term, 1881, of the district court, presented an indictment against the defendant, said Lydick, for selling malt and spirituous liquors in the city of Falls City, without having complied with the conditions and

obtained a license as required by law.   11th. That the
selling was not denied and was proven as laid in the
indictment.   12th. That the paper purporting to be a
license as aforesaid was, over the objection of the state,
admitted to the jury as evidence."

The district attorney prayed the court to give in
charge of the jury the following instructions :

"*First*.  The jury are instructed that if they find
that the city council transferred the license of Mr.
Plant to the defendant, and granted the defendant no
other license, then that transfer will not protect him,
defendant, in selling malt, vinous, and spirituous li-
quors in Falls City.

"*Second*.  If the jury find that the city council order-
ed the transfer of Plant's license to defendant, and
instead thereof, the city clerk without authority issued
a license in form, that the same is without authority
and does not protect defendant."

Which prayer the court refused, and in effect di-
rected the jury to acquit the defendant.

The several statutory provisions applicable to the
question under consideration, prior to June 1, 1881,
are as follows: Chap. LIII. of the code of criminal
procedure.   Gen. Stat., 851.

Sec. 572.  The county commissioners of any county
in this state may, at any regular session of said board
of commissioners, grant and issue a license for the
sale of malt, spirituous, and vinous liquors, to any
person or persons who shall comply with the follow-
ing conditions :

*First*.  The applicant for a license shall file with the
county clerk the petition of at least ten freeholders of
the precinct in which he resides, signed and attest-
ed before a justice of the peace, or other competent
officer, setting forth that the applicant for license is a
man of respectable character and standing, and a resi-

dent of this state, and praying that a license may issue to him.

*Second.* The applicant shall at the same time file with the county clerk his bond to the county, in the sum of not less than five hundred dollars, nor more than five thousand dollars, with good and sufficient security, to be approved by the county commissioners, conditioned, that during the continuance of his license he will not keep a disorderly house; that he will not allow gambling with cards, dice, or any other implements or devices used in gambling, within his house or within any outhouse, yard, or other premises under his control, and for the payment of all damages, fines, and forfeitures which may be adjudged against him under the provisions of this chapter.

*Third.* The applicant shall pay into the county treasury, for the use of the school fund, to be distributed as other moneys, the sum of not less than twenty five dollars, nor more than five hundred dollars, at the discretion of the county commissioners, and file the treasurer's receipt therefor in duplicate with the county clerk, before such license shall be issued.

Sec. 573. No license shall be issued for a longer period than one year, nor for a less period than six months, and shall specify particularly the place where the person obtaining the license intends selling liquor during the continuance of said license, which said license shall be in the following form, as near as can be, making changes to suit each case.

Sec. 574. Any person licensed as before provided, who shall give or sell any malt, spirituous, or vinous liquors, or other intoxicating drinks, to any minor or apprentice, or servant under twenty-one years of age, without the consent of the parents, guardian, or master thereof, shall forfeit and pay for each offense the sum of twenty-five dollars, for the use of the school fund.

26

SEC. 575. Any person so licensed who shall sell any intoxicating liquor to an Indian, insane person, or idiot, shall be subject to a fine of not less than fifty dollars for every such offense.

SEC. 576. The person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic; he shall support all paupers, widows, and orphans, and the expenses of all civil and criminal prosecutions growing out of, or justly attributable to his retail traffic in intoxicating drinks; said damages and expenses to be recovered in any court of competent jurisdiction by any civil action on the bond named and required in sec. 572.

Section 586 provides that all the powers and duties in said chapter "devolving upon the county comissioners shall belong to and be exercised exclusively by the proper authorities of any or all incorporated towns and cities of this state within the incorporated limits thereof;" provides "that such incorporated cities and towns may require such additional sum to be paid for license under this chapter as to them may seem best, not to exceed one thousand dollars."

Sections 1 and 2 of an act entitled "An act to regulate the issuance of license," etc., approved Feb. 25, 1875, provides that "all applications for license to sell malt, spirituous, and vinous liquors, in the state of Nebraska, made to commissioners of any county, or council of any city in this state, shall lie over for the space of two weeks before action is taken thereon, when, if there be no objection in writing made and filed to the issuance of said license, and the provisions of chap. 53 of the code of criminal procedure have been fully complied with, it may be granted. If there be any objection, protest, or remonstrance filed in the office where the application is made against the issuance

of said license, the county commissioners or city council shall appoint a day for a hearing of said case, and if it shall be satisfactorily proven that the applicant for license has been guilty of the violation of section 572, 574, and 575 chap. 53 of the code of criminal procedure, or any other restrictions now legally placed upon the sale of malt, spirituous, and vinous liquors, within the space of one year, or if any former license shall have been revoked for any misdemeanor against the laws of this state, then the board of county commissioners or council of any city shall refuse to grant said application for license," etc. Laws 1875, 24.

Among the powers granted to cities of the second class, by the act of March 1, 1879, is: " to license, regulate, and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license. * * * *Provided further*, that in granting licenses, such corporate authorities shall comply with whatever general laws of the state may be in force relative to the granting of licenses." Laws 1879, 212. [Comp. Stat., 115.]

An examination of the above provisions of law, can scarcely fail to satisfy any one that the people of this state have reserved to themselves, acting through the several local boards, county and city, the right to discriminate between the different applicants for liquor licences, to license such applicants as upon the principles laid down should be deemed worthy, and refuse those who, upon the application of the same principles, should be held to be unworthy. A licensee, under the above provisions, accepts from the authorities a personal trust and assumes personal duties and responsibilities quite repugnant to the idea of his selling his license along with his stock on hand, furniture and

fixtures. Under statutes much less discriminating than ours, it has been held by the courts of Kentucky, Indiana, Delaware, Alabama, Louisiana, Pennsylvania,. New York, and other states, that a liquor license is a personal trust or permit, and is incapable of assignment. In some cases it has been held that the privilege of selling intoxicating liquors was of so personal a nature that it could not be exercised through an agent. But I think that as long as the original licensee is in a position to respond to all damages and penalties, civil and criminal, imposed by the statute upon vendors of liquors or connected with or growing out of such traffic, he may carry on the business through an agent. But he must be in such position that the acts of such agent, in respect to the business, will in law be his acts, and for which he and his bondsmen will be held responsible.

The act of March 1, 1879, above referred to, is the charter of the city of Falls City, as well as of all other cities of the second class and villages, in this state, and all official acts of the mayor and council of said city, not expressed in or fairly intended by the provisions of said act or some other general law of the state applicable thereto, are *ultra vires* and void.

The mayor and council had the power to grant a license to the defendant only upon his complying with the terms and conditions, doing the acts prescribed in the provisions of law above quoted for applicants for licenses, and in the case at bar it was the duty of the court to have enquired whether the similated license which the defendant held was issued upon such terms or not.

The instructions prayed by the district attorney express the law of this case, so far as they go, and ought to have been given in charge to the jury.

The court erred in instructing the jury "that the

license introduced in evidence is sufficient to justify the defendant for selling the liquor charged in the indictment."

The following authorities were considered in coming to the conclusions indicated above: *Thompson v. State,* 37 Ala., 151. *State v. Prettyman,* 3 Harr. (Del.), 570. *Gault v. State,* 34 Ga., 533. *Godfrey v. State,* 5 Blackf. (Ind.), 151. *Pickens v. State,* 20 Ind., 116. *Runyon v. State,* 52 Id., 320. *Shaw v. State,* 56 Id., 188. *Barns v. Commonwealth,* 2 Dana (Ky.), 388. *Gray v. Commonwealth,* 9 Id., 300. *Krant v. State,* 47 Ind., 519. *Commonwealth v. Bryan,* 9 Dana, 310. *Commonwealth v. Bramon,* 8 B. Monroe (Ky.), 374. *Roberts v. O'Connor,* 33 Maine, 496. *Hays v. State,* 13 Mo., 246. *State v. Bryant,* 14 Id., 340. *Long v. State,* 27 Ala., 32. *Lewis v. United States,* Morris (Ia.), 199. *Stokes v. Prescott,* 4 B. Mon. (Ky)., 37. *Mayby v. Bullock,* 7 Dana, 337. *Gibson v. Kauffield,* 63 Pa. St., 168. *United States v. Overton,* 2 Cranch C. C., 42. *Commissioners v. Dougherty,* 55 Barb., 332. *The People v. Acton,* 48 Id., 527. *Hang v. Gillett,* 14 Kan., 140. *Fell v. State,* 42 Md., 71.