In re BRODBINE.

(District Court, D. Massachusetts. April 24, 1899.)

No. 840.

1. BANKRUPTCY—ASSETS—LIQUOR LICENSE.
   Under the laws and regulations in force in the city of Boston, the right to apply for the renewal of a license to sell liquor, held by the bankrupt, passes to his trustee as assets in bankruptcy, and may be disposed of by the latter for the benefit of the estate.

2. SAME—JURISDICTION IN SUMMARY PROCEEDINGS—RIGHTS OF THIRD PERSONS.
   On a petition by a trustee in bankruptcy, alleging that the bankrupt and another jointly held a license for the sale of liquor, that the bankrupt was the sole beneficial owner of such license, and that the other party had no financial interest in the same, and praying the court to enjoin the latter from applying for a renewal of the license, and to require him to join the trustee in transferring the license to a prospective purchaser, by application to the licensing board, held, that the court had no jurisdiction to determine the rights of the respondent in a summary proceeding of this character, but that the trustee might apply for leave to modify his petition so as to make it a bill in equity.

In Bankruptcy.

Dana B. Gove & Sons, for bankrupt.
Wm. Henri Irish, for trustee.

LOWELL, District Judge. The amended petition filed by the trustee seeks to compel Cornelius Brodbine, the father of the bankrupt, to withdraw his application for the renewal of a liquor license now standing in his name and that of the bankrupt, to enjoin him from renewing that application, and to compel him to request the licensing board to issue the license to the person who shall purchase it from the bankrupt's estate. The petition alleges that the respondent has no financial interest in the license, that he has never paid any money on account of the same, and that the bankrupt caused the respondent's name to be placed upon the license in order to prevent a lapse of the privilege granted thereby in case of the bankrupt's death.

It has already been held that the right to apply for a renewal of a liquor license in Boston passes to the trustee in bankruptcy. The question raised in this case concerns the jurisdiction of this court in this proceeding to compel the respondent, a third party, to join in or to make the transfer or surrender of the license which is necessary in order that the trustee may convert into money its surrender value for the benefit of the bankrupt's estate. Under the act of 1867 it was held that the assignee in bankruptcy could not recover, by summary proceedings, property in the hands of a third party which was alleged to belong to the bankrupt's estate, but that the assignee must proceed by regular suit at law or in equity, as the facts might require. Smith v. Mason, 14 Wall. 419; Marshall v. Knox, 16 Wall. 551; Knight v. Cheney, Fed. Cas. No. 7,883; In re Evans, 1 Low. 525, Fed. Cas. No. 4,551. It seems that the act of 1841 was construed differently by reason of its different language. Ex parte Christy, 3 How. 292; Knight v. Cheney, ubi supra. There is nothing in the act of 1898 to give broader jurisdiction to the district court in summary proceedings than it possessed under the act of 1867. Section 1 of the earlier act, which was held by the supreme court not to give this court jurisdiction by summary proceedings, reads as follows (omitting immaterial parts):

"The several district courts of the United States are constituted courts of bankruptcy, and shall have original jurisdiction in all matters and proceedings in bankruptcy, and they are hereby authorized to hear and adjudicate upon the same according to the provisions of this act, and the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; and to the marshalling and distribution of the different funds and assets so as to secure the rights of all parties and due distribution of the assets among all the creditors; and to all acts, matters and things to be done under and in virtue of the bankruptcy, until final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy."

The material parts of section 2 of the act of 1898 are as follows:

"The district courts of the United States are hereby invested with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings; to (2) allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankrupt estates; (3) appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary for the preservation of estate, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified; (5) authorize the business of bankrupts to be conducted for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estate; (6) bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy; (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided; (8) close estates, whenever it appears that they have been fully administered, by approving the final accounts and discharging the trustees, and reopen them whenever it appears they are closed before being fully administered; (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this

act. Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated."

If there be any difference in the jurisdiction conferred by these two sets of provisions, that conferred by the act of 1867 seems to me the more extensive. Clauses 6 and 15 of section 2 of the act of 1898, which were relied upon in argument by counsel for the trustee, should not be construed, I think, to extend the jurisdiction of this court to a very large and important class of controversies not otherwise brought within the court's jurisdiction. The case at bar is not one in which the petitioner seeks to recover property from a third person, who is holding it by a title derived from the bankrupt, which title is made void or voidable by the bankrupt act. In cases of that sort it may be that the court of bankruptcy has jurisdiction to recover the property. In re Gutwillig, 92 Fed. 337. But see Knight v. Cheney, Fed. Cas. No. 7,883. The title of Cornelius Brodbine is not derived from the bankrupt, but immediately from the licensing board.

Coming to the decisions which construe the act of 1898, I find that the circuit court of appeals for the Eighth circuit has held, in Davis v. Bohle, 92 Fed. 325, and in Re Sievers, 91 Fed. 366, that section 2 of the act of 1898, "which empowers courts of bankruptcy, in substance, to appoint receivers or marshals, upon application of parties in interest, to take charge of the property of bankrupts after the filing of petitions against them, for the preservation of their estates, and to make such orders, issue such process, and enter such judgments as may be necessary for the enforcement of the provisions of this act," gives the district court jurisdiction of a petition filed by certain creditors of the bankrupt against his common-law assignee for the benefit of his creditors to enjoin such assignee from proceeding under the general assignment. The court further held that the district court had jurisdiction to appoint a receiver to take possession of the assigned property and effects, who should hold them subject to the court's order. In Davis v. Bohle, as in Re Gutwillig, the respondent claimed title under the bankrupt, and the title was created by an assignment made void or voidable by the act. Furthermore, the court of appeals seems to have treated the jurisdiction of the district court as depending upon its right "to recover the assigned property from the assignee, and preserve it for the time being, until the assignor had been adjudicated a bankrupt, and a trustee had been selected by the creditors." It does not follow that the court of appeals would hold that the district court had jurisdiction to make final determination of the controversy between the trustee in bankruptcy and the common-law assignee. In both these respects Davis v. Bohle differs from the case at bar, for here the trustee seeks to recover property alleged to belong to the bankrupt from a person who does not claim title under the bankrupt; and, again, it is not the respondent's temporary restraint from dealing with the property which is sought, but his final and complete deprivation of the property. In Re Gutwillig, 92 Fed. 337, the circuit court of appeals for the Second circuit said that:

"If the general assignment made by the alleged bankrupt would, in the event of an adjudication of bankruptcy, be treated as void as against the

trustee of his estate, the order enjoining the assignee from disposing of or interfering with the property transferred pending the hearing was a proper and expedient exertion of the authority conferred upon courts of bankruptcy by clause 15, § 2, of the present act."

The remarks made concerning Davis v. Bohle are equally applicable to In re Gutwillig. So far as has been pointed out, these are the only two decisions made by a circuit court of appeals which can be supposed to have any bearing upon the case at bar. Whatever view I am disposed to take of the correctness of these decisions, I am practically bound by them. Beach v. Hobbs, 82 Fed. 916. But, as has just been said, they do not cover the case at bar. A variety of more or less conflicting decisions have been made by the various district courts. In Mitchell v. McClure, 91 Fed. 621, Judge Buffington held that the court of bankruptcy had no jurisdiction of a suit of replevin brought by a trustee to recover possession of property held adversely by the defendant under claim of title thereto. The action was a common-law action, not a petition for summary process. If the court has no jurisdiction of a common-law action to recover property, a fortiori it has no jurisdiction to recover it by summary process. See, also, Burnett v. Mercantile Co., Id. 365, decided by Judge Bellinger. In Re Kelly, Id. 504, Judge Hammond held that, under an involuntary petition, and pending an adjudication, a receiver could not be appointed to take possession of property in the hands of a third person, who claimed title thereto under a conveyance made voidable by the act. The case goes further than is necessary to sustain the respondent's contention in this case. See, also, In re Rockwood, Id. 363, decided by Judge Shiras. In Re Brooks, Id. 508, Judge Wheeler held that a court of bankruptcy has jurisdiction of a trustee's petition filed against one who had foreclosed a chattel mortgage of the bankrupt's property after adjudication to compel the return of the property to the trustee. In that case the respondent claimed under the bankrupt, and by a title voidable in bankruptcy. The case is, therefore, no authority for the petitioner in the case at bar. In Re Smith, 92 Fed. 135, 139, Judge Baker agreed with Davis v. Bohle, but said: "If the property of the bankrupt is in the possession of a person who has a colorable title, as purchaser or otherwise, it may be that the court would not compel him, by a summary proceeding, to surrender the possession." In Carter v. Hobbs, 1 Nat. Bankr. News, 191, 92 Fed. 594, the same judge took jurisdiction of a "petition or bill" to set aside a fraudulent transfer of the bankrupt. He seems to have rested his decision upon the ground that, "where the trustee brings suit to enforce a right of action which never existed in the bankrupt, the district court has ample jurisdiction to maintain it." In this case, if Cornelius Brodbine had no equitable right in the license, as alleged in the petition, there did exist in the bankrupt a right of action to prevent the respondent from interfering in its control. In Re Buntrock Clothing Co., 1 Nat. Bankr. News, 228, 92 Fed. 886, Judge Shiras refused to compel by summary process the mortgagee of a bankrupt's chattels to deliver the mortgaged property to the trustee, saying:

"If the trustee questions the validity of the mortgages, he can attack the same by proper proceedings to that end, or he may redeem the property by

payment of the mortgage liens, or in other ways, perhaps, protect the interests of creditors; but he cannot, by summary proceedings, compel the delivery of possession of property by third parties who hold the same as mortgagees, and whose possession antedates the filing of the proceedings in bankruptcy." "The mortgagees cannot be compelled to yield up possession of the property in their hands which passes into their possession before the proceedings in bankruptcy were begun by an order entered in a summary proceeding of this character."

From this hasty review of the decided cases, it appears that no one of them is authority for the petitioner's contention in the case at bar, while several of them are direct authorities in support of the respondent. As was said in Marshall v. Knox, 16 Wall. 551, 556:

"We think that it could not have been the intention of congress thus to deprive parties claiming property, of which they were in possession, of the usual processes of law in defense of their rights."

If the petitioner desires so to modify his petition as to make it a bill in equity, he may apply for leave to do so. See In re Evans, 1 Low. 525, 526, Fed. Cas. No. 4,551. Petition dismissed.