CHRISTIAN FEIGENSPAN, a corporation,

63    179
a64   792

*v.*

ROBERT MULLIGAN and GEORGE WELLENDICK.

[Filed February 11th, 1902.]

1. An attempted chattel mortgage of a liquor license will be presumed. to be an attempt to mortgage the privilege conferred by the license, and not the paper license as a chattel of independent intrinsic value, unless the contrary clearly appears.

2. A liquor license, being a mere privilege, and not a property right, is incapable of being the subject of a chattel mortgage, either under the general law or under the act of March 28th, 1892 (*Gen. Stat. p. 1823 § 195*), as the statute does not make the privilege a property right.

3. The holder of a liquor license in a city of the second class executed an instrument in the form of a chattel mortgage, purporting to convey the license, by which the mortgagee, on default, was authorized to sell the license for the best price obtainable. The mortgagee, on default, made no effort to secure the consent of the city to a transfer of the license, which it was empowered to authorize by the act of March 28th, 1892. (*Gen. Stat. p. 1823 § 195*), but advertised the license for sale in connection with other property covered by the mortgage, and purchased the license and other property for a lump sum.—*Held,* that the relation of the mortgagee to the property was not changed by the sale, but was to be determined from the instrument itself.

4. Where it does not appear that the mortgage is restricted to tne written license independently of the privilege granted thereby, the mortgage will not be construed to entitle the mortgagee to the possession of the written license merely for the purpose of preventing the mortgagor from conducting his business.

5. The instrument containing a requirement that the sale of the mortgaged property on default shall be "for the best price obtainable," the mortgagee is not entitled to sell the license at a foreclosure sale, or to the possession thereof for the purpose of such sale, when it does not appear that he has obtained the consent of the city, under the act of March 28th, 1892 (*Gen. Stat. p. 1823 § 195*), to a transfer of the license, or that the consent of the city thereto has been refused, without regard to whether the instrument be construed as a pledge of the privilege granted by the .written license, subject to a condition subsequent that the city consent thereto, or whether it be regarded as a mortgage of the written license as a chattel, as even in the latter case it would not be a sale for the best price obtainable if disconnected with the privileges granted thereby.

6. The provision of the instrument authorizing the mortgagee, in case of default, to take possession of the property and sell the same for the best price obtainable, does not authorize the mortgagee to take possession of the license except for the purpose of sale in accordance with the terms of the instrument.

On demurrer.

*Messrs. Roberson & Demarest,* for the complainant.

*Messrs. Riker & Riker,* for the demurrants.

STEVENSON, V. C.

The bill exhibits the following case:

The complainant, a corporation under the laws of New Jersey, the corporate objects and business of which are not stated, held two chattel mortgages, made by the defendants to secure, in the aggregate, $807.50. The larger of these mortgages, and apparently the other as well, covered "certain saloon fixtures at number 463 Avenue C in the city of Bayonne, where the said mortgagors conducted a saloon."

On or about June 29th, 1900, the complainant lent the defendants $250 for the purpose of obtaining "the license from the mayor and council of the city of Bayonne, to keep a beer saloon and restaurant at 463 Avenue C in said city." The license ran from June 1st, 1900, to June 1st, 1901. The defendants gave to complainant their promissory note for the $250, dated June 29th, 1900, and payable one day after date, and to secure the note executed and delivered to complainant an instrument which is described in the bill as follows: "A certain chattel mortgage bearing date the 29th day of June, 1900, conditioned for the payment of said note." By the terms of this instrument the defendants "bargain and sell" unto the complainant, "its successors and assigns, the license above mentioned." So far the bill distinctly alleges that the thing attempted to be sold by way of mortgage was the permission or privilege which the defendants enjoyed to keep a beer saloon and restaurant at No. 463 Avenue C, and the description of the instrument which purported to effect the sale as a chattel mortgage might well be disregarded.

The bill, however, annexes and incorporates a copy of the so-called chattel mortgage, from which it appears that the form of contract employed to secure the payment of the $250 was the ordinary form of a mortgage of chattels. By this instrument the defendants, in terms, bargain and sell

"all the goods and chattels mentioned, being the license granted to us by the mayor and council of the city of Bayonne to keep a beer saloon and restaurant at No. 463 Avenue C, Bayonne, N. J., from the first day of June, 1900, to the first day of June, 1901, and all renewals of the same."

The defendants, the mortgagors, also warrant the title of "all and singular the said goods and chattels." In case of default in payment of the sum ($250) secured by the mortgage, the mortgagee is authorized to enter any premises where any of "the said goods and chattels" may be and to take and carry away "the said goods and chattels and to sell and dispose of the same for the best price they can obtain," and out of the proceeds of sale retain and pay the said sum of $250, &c.

On November 1st, 1900, the mortgages being all due and unpaid, the complainant, by its appointed agent, undertook to seize the mortgaged property for sale. The defendants refused to deliver to this agent "the license mentioned and described in the chattel mortgage." Thereupon the complainant's agent advertised the mortgaged property for sale at public auction. The advertisement of sale describes saloon fixtures, a stock of liquors, &c., and property which is designated: "License to keep a beer saloon and restaurant granted by the mayor and council of the city of Bayonne, dated June 14th, 1900." The sale was held on November 15th, 1900, and the entire property covered by the three mortgages was struck off to the complainant in one lot for $300.

The bill alleges that on account of the refusal of the defendants to surrender "the said licenses" to the complainant's agent, who conducted the sale, that agent was unable "to make a delivery thereof" to the complainant; that the defendants refused after the sale to deliver "the said license" to the complainant; that they continue to conduct their saloon on the premises above mentioned "by virtue of said license;" that the complainant

believes that the defendants "have concealed said license" although the complainant "is entitled to possession thereof for the purpose of carrying on said business under said license."

The bill further sets forth that the complainant sought by a writ of replevin, issued out of the supreme court, to obtain "possession of said license," but that the sheriff to whom the writ was addressed was unable to find "said license" and that the said complainant was compelled to proceed in its replevin suit without taking possession of "said license."

The bill alleges that the defendants are holding and concealing "said license" for the purpose of defrauding the said complainant and preventing it from taking possession thereof by virtue of said chattel mortgage "and the sale of the goods and chattels" above described, and that it is the intention of the defendants to continue their saloon business until the termination of said license on June 1st, 1901.

Strictly speaking there is no prayer for relief in the usual and proper form. Process of injunction is prayed for to be directed to the defendants, enjoining them from transferring their license "being the license granted, &c., to keep a beer saloon and restaurant, &c., and all renewals of the same," and from conducting their saloon by virtue thereof "until the termination of the said replevin suit." The bill is therefore an injunction bill largely, if not exclusively, in aid of an action at law.

Upon filing the bill a preliminary restraining order was made enjoining any transfer of the license. As a condition apparently to such order the complainant elected to discontinue the replevin suit, and, as is stated in complainant's brief, "elected that the suit for the recovery of the license should continue in the present suit." No amendment of the bill was made, but in view of the arguments of counsel on this demurrer the bill may be deemed amended so as to pray for such injunction prohibitory or mandatory as the facts set forth may call for.

The complainant's brief takes the position that this suit is not for the foreclosure of the mortgage, "but merely to restrain defendants from selling or using the complainant's property."

As the bill now stands, its sufficiency must be tested by the question whether it sets forth facts which entitle the complainant

to injunctive relief for the protection of the property which it acquired by the so-called chattel mortgage of the license or for the protection of the alleged further title to or interest in said license which it claims to have acquired by the auction sale.

The bill makes no attempt to distinguish between a license, *i. e.*, a permission to sell intoxicating liquors and the paper-writing which usually, but not necessarily, evidences such license. The permission and the permit bear the same name and hence the confusion. The fact that the permission to keep a saloon and restaurant at No. 463 Avenue C was granted by the municipal authorities to the defendants is distinctly stated at the commencement of the complaint set forth in the bill. Nowhere is there any allegation that any paper-writing accompanied this permission. The bill and the so-called chattel mortgage, however, call this valuable privilege, for which the defendants paid a fee of $250, "goods and chattels" precisely like the chairs and tables and decanters in the saloon. The complainant also undertook to treat all the rights which it acquired under the mortgage as if they consisted of the usual conditional title to chattels acquired by a chattel mortgage and the rights and remedies connected therewith.

In view of the scope of the argument I shall assume that it appears with sufficient distinctness that the defendants not only held the privilege of selling intoxicating liquor without liability to criminal prosecution, but also held some kind of a certificate in writing which evidenced such privilege. The difficulty in dealing with this case largely arises from the erroneous notion which pervades the bill and so-called chattel mortgage that the thing which constitutes a liquor license is a chattel which is purchased from the municipality and is capable of sale and delivery and seizure under a writ of replevin.

The important question to be determined is what property rights the complainant acquired by the instrument set forth in the bill? I shall not undertake to apply in detail the various clauses of the instrument to the subject-matter of the contract which the parties were endeavoring to make. What the parties intended to mortgage is beyond dispute. It was the valuable privilege of keeping a saloon and restaurant on the premises

described as No. 463 Avenue C. It was not a chattel, a paper-writing, which had no value except as it evidenced such privilege. The remedial rights growing out of the instrument relating to the paper-writing as a chattel must be construed with reference to the substantial intention of the parties, which plainly never included the granting of a wider right in respect of the paper-writing than was granted in respect of the privilege. Common sense calls for such a construction as will, at all times, keep the evidence of the privilege for the benefit of the party who holds the privilege. Of course the holder of stock in a corporation or of a license to keep a saloon, or a license to practice law or medicine, may intentionally sell and convey the certificate of his rights without undertaking to sell or convey the rights themselves, but such an intention must distinctly appear. The complainant, in my judgment, did not acquire at any time any more absolute title to the intrinsically worthless paper-writing, which presumably he vainly sought to have seized under a writ of replevin, than he acquired to the valuable incorporeal right or privilege which the writing evidenced.

The extent to which the complainant's right to, or in respect of, the privilege of keeping a beer saloon and restaurant required for its beneficial enjoyment the possession of the paper-writing defines the extent of such right of possession. If the privilege of keeping the saloon was assignable, then the assignee of the privilege would have the right to possess the paper-writing. If such privilege was absolutely unassignable, then the party claiming as assignee would have no right to the paper-writing, inasmuch as no intention is disclosed to sell or mortgage the paper-writing as an independent chattel of intrinsic value.

If such privilege was conditionally assignable, then the conditional assignee would take a correspondingly conditional right to the possession of the paper-writing.

When the parties to a written instrument employ a set form of words, furnished to them by a form-book or a printed blank, and incongruous with the subject-matter of their bargain, because adapted to an entirely different kind of bargain from that which they are trying to make, difficulties of construction are almost sure to arise. In such cases equity may require that the

general intention of the parties should be carried out, without at all times strictly applying the ready-made phrases which the parties have inaptly employed by heedlessly following their printed blank or form.

It seems clear that the power which the defendants possessed, as the holders of this license, to substitute, with the municipal consent, some other person in their place as licensee was the valuable thing which was intended to be used so as to secure the complainant's debt.

This license was not generally to keep a beer saloon and restaurant anywhere in Bayonne, but to keep such beer saloon at No. 463 Avenue C, and not elsewhere. It does not appear what interest the defendants had in the premises which were licensed, whether as tenants under a lease or owners of the fee, or otherwise. The bill of complaint seems to proceed upon the theory that, after the form of a chattel mortgage sale at public auction had been pursued and the complainant had caused the thing which is called a license to be struck off to itself as the highest bidder, it had the right to take possession of the licensed premises, as against the defendants, and carry on the saloon and restaurant there, and that the continuance of such business, after such sale, by the defendants was a wrongful act, which should be enjoined.

The court is not informed of the facts upon which depend the questions as to the possible rights which the complainant may have acquired by their contract in respect of the occupation of the premises known as No. 463 Avenue C. Some ascertainment of all such possible rights seems necessary to any definition of the rights which the complainant took under its contract, and of the remedies which were available to it for the recovery of its debt, as well as the limitation upon those remedies. I am not at all sure that the nature of the defendants' occupation of the mortgaged premises is not a necessary factor to be considered and dealt with in determining what remedial rights the complainant held when it filed this bill.

Our first inquiry relates to the extent to which this Bayonne license to keep a beer saloon and restaurant was assignable. It

was undoubtedly assigned by way of mortgage as far as the law would permit.

Apart from the effect of recent legislation, to be considered later, the law is plain that this license is not property and is not assignable, but is a "mere temporary permit to do what otherwise would be illegal, issued in the exercise of the police power." *Voight* v. *Excise Board of Newark, 30 Vr. 358, 360 (Justice Gummere)*; *Semple* v. *Flynn, 10 Atl. Rep. 177; 17 Am. & Eng. Encycl. L. 232.*

But it is claimed that the act of March 28th, 1892 (*Gen. Stat. p. 1823 § 195*), which provides that in cities of the second class it shall be lawful for the license board "to permit a transfer of such license from the person holding such license to another person, or from one locality to another locality in said cities," has made a change in the legal character of licenses in cities of the class to which Bayonne belongs. Precisely this point seems to have been settled adversely to the complainant's contention in *Voight* v. *Excise Board of Newark, supra.* The statute construed in that case empowered "the excise board or board of excise commissioners of any city * * * in their discretion to transfer and revoke any license granted by them." The supreme court held that the contention that this statute making a license transferable converted a "mere privilege into a property right" had no basis.

A distinction may be taken between the statute dealt with in *Voight* v. *Excise Board of Newark* and the statute applicable to Bayonne, because in the former the licensing power is authorized to transfer the license, while in the latter the licensing power is authorized to *permit* a transfer of the license. Giving this distinction its full force, the fact remains that under each statute the license remains untransferable until the licensing authority has acted, and in each case any action at all is entirely discretionary, and full control is reserved as to the person to whom, or the place to which, any transfer will be allowed. I do not think that the essential nature of a license like that of the defendant has been altered by the act of March 28th, 1892.

In the case of *Hoagland* ads. *Hall, 9 Vr. 351,* the subject-matter of a contract to sell was a leasehold of an inn and other per-

sonal property, including an item described as "the licenses of the house." The question was whether the plaintiff (the vendor) was "incapable of performing his part of the contract for the reason that the license was not assignable." The contract called for delivery of the licensed premises at a future day. The decision was to the effect that the vendee was charged with knowledge of the law which made the license, *i. e.*, the privilege, untransferable, and that, therefore, it was "certain that what he sought was the acquisition of a paper which would be absolutely ineffectual as an authority to keep a tavern." The court held that the certificate, *i. e.*, the paper-writing, was precisely what the vendee contracted for and suggest that he may have thought that the possession of the certificate might be "in some way beneficial in a future application to have his house licensed as an inn."

I see nothing stated in the opinion of the court in this case of *Hoagland* ads. *Hall* which conflicts with the views which I have expressed. It merely presents a case where a licensee was giving up his licensed premises and abandoning the business which he was privileged to conduct on those premises, and he therefore very naturally included in his sale his "license"—*i. e.*, the certificate of his license, which no longer could be of any value to him—for what it might be worth to the vendee, both parties knowing well that the privilege which the certificate evidenced would expire upon the consummation of the sale. This case is an illustration of what has been heretofore stated, viz., that the holder of a piece of paper intrinsically worthless, but evidencing a valuable right or privilege, may contract to sell the same without regard to the right or privilege which it evidences if he sees fit to do so. In construing such a contract the intent is to be discovered. The circumstances in the case of *Hoagland* ads. *Hall* made the intent plain beyond dispute.

A bill of sale of a certificate of stock would ordinarily raise no question of intent, because the property rights of the stockholder and the piece of paper—the chattel which evidences those rights—are equally transferable.

The bill of sale of an attorney's or a physician's certificate evidencing his right to practice law or medicine, would also seem

to give no difficulty in regard to the intent, because the certificate would be all that the attorney or the physician could transfer.

The difficult case is presented here where the certificate of the license, as a chattel, is transferable without any limitation, while the privilege to keep a beer saloon and restaurant, which it evidences, is transferable only in case a condition shall happen within the discretion and control of a third party. I have already indicated what seems to me to be the proper rule for the construction of an instrument purporting to convey such a certificate.

While the defendants' license was merely a personal privilege, and not property capable of being sold or mortgaged like lands or chattels or choses in action, it may be conceded that its capability of being transferred made it possible for the defendants to make a valuable and effective contract with references to such possible transfer.

An instrument might be executed which would operate as a transfer upon the happening of a condition subsequent, viz., the municipal permission to transfer. A contract might be made by which the licensee obligated himself to execute a transfer upon the occurrence of the condition which would make a transfer legally possible. Whether the so-called chattel mortgage should be regarded in equity as one or the other of these things is, I think, immaterial for the purposes of this case. At most, what the complainant obtained to secure his loan was a right to have the license transferred and the proceeds of such transfer applied to his debt in case the necessary municipal consent to such transfer should be obtained. Accompanying this right were various ancillary and remedial rights against the defendants affecting their conduct in relation to the transfer and affecting the possession and control of the written certificate of the license. But, until the necessary municipal permission to transfer should be obtained, the enjoyment by the defendants of their privilege to keep a saloon is not affected by any express or implied contract which I can discern. Until some reason connected with securing the transfer should arise for committing the custody of the certificate of the license to the complainant, the mortgagee, I see

no reason why the defendants should not hold the written evidence of the privilege which they continued to enjoy.

It must be admitted that when the mortgage debt came due the complainant had the right to proceed to secure the transfer of the license and to have possession of the certificate so far as was necessary for that purpose. The complainant might also have various equitable remedies in case the defendants did not perform their express and implied obligations in relation to the business of procuring the permission for transfer.

In this case, however, the complainant made no effort to secure the municipal consent, but proceeded to seize the certificate of license and sell the license itself at auction to the highest bidder. Not being able to obtain the certificate, the complainant assumed to offer for sale to the highest bidder the incorporeal right or privilege of keeping a beer saloon and restaurant and the certificate of that privilege as well. These things were sold in one parcel, with a lot of chattels which had been mortgaged, as we have seen, to pay certain other debts, and the proceeds of which would therefore go to the payment of those debts. The price, therefore, which would be obtained would be for the whole lot, and the price which was realized from the sale of the privilege of keeping a beer saloon, with its certificate, could never be ascertained. Moreover, to sell at auction a personal privilege which would only become transferable from the party in whom it was then vested in case the consent of the municipal authorities to such transfer could be obtained, was practically to offer a ticket in a lottery. The complainant, being the highest bidder, was declared the purchaser of all the property so offered for sale.

Whatever may be the correct construction of the so-called chattel mortgage, I do not see how such a sale as is set forth in the bill could in equity alter the relation of the complainant to the property which it undertook to sell or strengthen its title thereto. Even an outside purchaser, unless we are proceeding upon altogether erroneous principles, would seem to occupy no better position with respect to the possession of the certificate than did the complainant before the sale until the necessary consent to the transfer of the license should be obtained, but the

character of this attempted sale and the fact that the complainant sold to itself make it unnecessary to pursue this inquiry.

In ascertaining whether the complainant is entitled to any relief in this case, we may therefore disregard this attempted sale and deal. solely with the rights which the complainant held under its so-called chattel mortgage after the debt thereby intended to be secured had come due, and the complainant undertook to enforce its lien or contract, or conditional conveyance for the collection of the same.

Apart from the power of sale contained in the so-called chattel mortgage which will be considered later, I see no grounds for any injunctive relief for the complainant in this case.

It is not alleged that the defendants by any conduct of omission or commission have interfered with the obtaining of the municipal permission for the transfer of this license, or that the complainant has endeavored to obtain such permission. This court is not asked to conduct any proceedings for realizing the value of the rights which the complainant holds by way of mortgage; if any such proceedings are possible, the sole remedy prayed for is a writ of injunction.

The bill proceeds upon the theory that whether the license should ever become assignable or not the defendants lost their right to enjoy it and should be compelled to surrender the certificate, worthless though it might be to the complainant. I cannot assent to such a view as I can find no intent in the mortgage that the defendants should part with their privilege except so far as the same might be lawfully and beneficially transferred to the complainant or its appointee.

The security for the complainant's loan was the valuable right to keep a saloon and restaurant, not the power to exclude the defendants from continuing that business.

The defendants pledged the possible right to keep a saloon and restaurant, not the power to throw them (the pledgors) out of that business if they did not pay the debt. Of course if the complainant had expressly agreed to discontinue their business as one of the steps to effect a transfer of their license, the case would be altogether different, but I find no trace of any such intention.

But it may be insisted that notwithstanding the fact that the privilege to keep a beer saloon and restaurant with its conditional assignability was the security given for the loan, still the defendants executed a chattel mortgage to secure that loan and they had at the time in their possession, as we have assumed, a certain chattel called a license which they described in their mortgage as the thing thereby conveyed. It may be urged that the defendants in this chattel mortgage expressly empowered the complainant to seize and sell this chattel for the satisfaction of their debt; that whether the purchaser at the sale of this chattel could acquire any right or privilege connected with the chattel, either absolutely or conditionally, was a matter to be considered by the defendants when they made their mortgage; that the complainant had a right in good faith upon default in the payment of its debt to proceed to sell the mortgaged chattel in pursuance of the power of sale.

The complainant would hardly claim that this contract should be regarded as a mortgage of the chattel (the certificate of license) only, and that a sale of this chattel under the provisions of the mortgage would not include any interest in the privilege of keeping a beer saloon and restaurant. The most favorable construction of the so-called chattel mortgage for the complainant's case makes it include both the certificate and the privilege, but makes the privilege to the extent that it was assignable follow the disposition of the certificate as a chattel under the strict construction of the contract as a chatted mortgage. If we adopt this view I do not think that it leads to a conclusion favorable to the complainant's case.

The complainant was not empowered to sell this chattel in such manner as it might see fit. There was a most important limitation upon this power of sale. It was obliged to sell for "the best price it could obtain." The complainant therefore could not ignore the peculiar character and incidents of this chattel as the representative and symbol of the privilege of keeping a beer saloon and restaurant. The complainant was bound to sell so as to realize the best price, not only for the certificate as a piece of paper, but for the valuable thing which would or might go with it, and which had been pledged to secure its

debt. The power of sale did not even refer to a sale at public auction. A private sale in this case might have been the more advantageous. Is it not plain that without reference to any possible right in respect of the occupation of the licensed premises, which may have been part of the mortgage property, the complainant proceeded to sell in violation of the provisions of the power of sale? If any circumstances existed which made this auction sale justifiable as the means which a reasonably prudent and careful man would employ to obtain the "best price" for the thing offered for sale, those circumstances should have been set forth in the bill of complaint.

Disregarding the claims put forth by the complainant, based on the auction sale to itself, the question in this case seems to be reduced to this: Does the bill show that the defendants wrongfully declined to surrender this certificate to the complainant for the proper sale thereof under this power of sale? The complainant did not demand the surrender of the certificate for the purpose of selling it for the best price it could obtain, in accordance with the limitation contained in the power of sale. It announced its purpose to sell the certificate at public auction as a piece of paper, with such uncertain possibilities of transfer as might go with it. It is not alleged that the complainant made any effort to sell the certificate in connection with a right to occupy the licensed premises, or that it made an effort to sell it with a condition that the municipal consent to a transfer should be obtained. No facts are shown from which it might be inferred that the municipal consent to a transfer was not obtainable, and that therefore the sale of the certificate at auction, without reference to any municipal consent to a transfer, was the most advantageous sale possible. If the defendants were obliged, on account of the strict meaning of the words which they employed in their contract, to submit to a sale of this certificate as an independent chattel, whether the privilege of keeping a beer saloon and restaurant went with such sale or not, which I am now assuming to be true, it still remains true that the complainant was obliged to sell for the "best price it could obtain," and therefore a sale of the certificate, as a piece of paper disconnected from the valuable privilege which it evi-

denced, would be justifiable only in case its sale in connection with such privilege should be impossible.

It may be noted that the mortgage empowered the complainant, in case of default, to enter the licensed premises "and take and carry away the said goods and chattels," as well as to sell and dispose of the same for the best price, &c. This language, in my opinion, cannot be construed to give the complainant an independent power to carry away the certificate without reference to the sale which it was authorized to make. In order to realize the best possible price for such a certificate in connection with the privilege which it evidenced it oftentimes would be necessary that the licensed business should be continued without break. In view of the peculiar subject-matter of this contract I think the power to seize the certificate is limited to the purposes of a sale. There is no power to distrain the certificate and hold it to the inconvenience of the defendants, in order to compel the payment of the debt.

My conclusion is that whether a strict construction of the chattel mortgage is made in favor of the complainant, or what seems to me to be a more equitable construction be adopted, the result is the same. The complainant had no right to take this certificate out of the possession of the defendants for the purpose which it advertised and announced. The complainant never demanded the certificate for the purpose of executing the power of sale according to its terms. The bill of complaint does not pray for any injunction restraining the defendants from interfering with the execution of this power of sale by the complainant, nor is any fact alleged from which it might be inferred that such injunction is necessary.

The defendants, in my opinion, had a right to continue their business under the valuable privilege which had been conferred upon them by the municipal authorities of the city of Bayonne until such time as that privilege might be lawfully transferred, in pursuance of their contract, to some other person for the best price for such transfer which could, with reasonable care and skill, be obtained. The defendants also, for their protection in carrying on this business, had a right to retain the certificate which constituted the evidence of their privilege—the evidence by

Feigenspan *v.* Mulligan.

which they could at all times protect themselves from a criminal charge. Giving the chattel mortgage the most favorable possible construction to the complainant, the defendants were bound to surrender their certificate only for the purpose of enabling the complainant to sell it for the best price that could be obtained. When the complainant demanded possession of the certificate, not for this proper purpose, but for the avowed purpose of selling the same in plain violation of the limitations of its power of sale, to the great injury of the defendants, I think the defendants were justified in refusing such demand. As to the refusal of the defendants to deliver their certificate before the sale was advertised, it should be observed that the sale, in fact, was advertised to be held, and was held, on the defendants' premises; that, until such sale should be held, the proper place for the certificate would seem to be on the licensed premises; that no refusal of the defendants is alleged to have been made to allow the sale of the certificate on the premises, in pursuance of the power of sale, for the best price that could be obtained. But however the first refusal of the defendants might have been regarded, if the purpose of the complainant in seeking to obtain possession of the certificate had not been disclosed, such purpose was afterwards distinctly disclosed, and, in view of such purpose, equity will give the complainant no aid.

It would seem that the most favorable construction of the instrument which is the basis of the complainant's rights makes it operate in a dual capacity, viz., as a pledge of the privilege which the defendants held of keeping a beer saloon and restaurant by way of a transfer of such privilege, subject to a condition subsequent or by way of an executory contract in relation to such transfer, and also as a mortgage, in the usual form of a chattel mortgage, of the certificate or piece of paper which evidences the above-mentioned privilege. An argument can certainly be made against making so large a concession to the complainant. But if such concession be made, I do not think that the bill states a case which entitles the complainant to any writ of injunction from this court to aid it in the enforcement of any right under the instrument.

The demurrer should be sustained.