[No. 5897.  Decided January 9, 1906.]

NATHAN DEGGINGER, *as Receiver of Stumpf & Morgan,
Respondent,* v. SEATTLE BREWING AND MALTING
COMPANY *et al., Appellants.*[1]

INTOXICATING LIQUORS—LICENSE—ASSIGNABLE AS PROPERTY.  An
unexpired municipal license to sell liquor for the term of one year,
paid for in advance, and which may be transferred by consent of
the city upon the observance of certain formalities, is property that
is assignable, and passes upon the insolvency of the licensee to a
receiver for the benefit of creditors.

PLEDGES—LIQUOR LICENSE—AGREEMENT PLEDGING AS COLLATERAL
SECURITY—FAILURE TO FILE OR RECORD—EFFECT AS TO CREDITORS—
STATUTES.  A pledge of an unexpired liquor license left in the pos-
session of the licensee is void as to creditors, whether construed as
a chattel mortgage or as a bill of sale, when it was not recorded as
a chattel mortgage as required by Pierce's Code, § 6549, nor as a
bill of sale as required by Bal. Code, § 4578.

Appeal from an order of the superior court for King
county, Frater, J., entered June 22, 1905, after a hearing
upon affidavits, restraining the transfer of a liquor license,
and directing the delivery of the certificate of license to the
plaintiff as receiver.  Affirmed.

*G. M. Emory* and *Scott Calhoun,* for appellants.

*Allen, Allen & Stratton,* for respondent.

MOUNT, C. J.—This appeal is from an order of the lower
court temporarily restraining the defendants from trans-
ferring a retail liquor license issued by the city to one I. G.
Morgan, and directing the Seattle Brewing & Malting Com-
pany to deliver the paper evidence of said license to the
respondent.  It appears from the complaint and the affidavits
filed at the hearing that, on December 20, 1904, the city of
Seattle issued to I. G. Morgan, of the firm of Stumpf &
Morgan, copartners, a retail liquor license, authorizing the

[1] Reported in 83 Pac. 898.

sale of liquors at retail for the term of one year, at No. 1222 Second avenue, at what is known as the "Brooklyn Cafe," in said city. The consideration for such license was $1,000, which was paid in advance. The money for the purchase of this license was furnished to Stumpf & Morgan by the Seattle Brewing & Malting Company. Morgan agreed to repay this money in monthly payments of $100 each until the amount due was fully paid, and to secure the repayment executed an agreement as follows:

"Collateral Pledge of License. Seattle, Washington, December 9, 1904.

"For and in consideration of money advanced and guarantees made in my behalf and for me, and for and in consideration also of the notes hereto attached, made payable by me to the said Seattle Brewing & Malting Co., I do hereby pledge all interest, claim or demand of whatsoever nature, I have now or may have in any sum of money or in any interest in that certain license of the city of Seattle directed to me, permitting the sale of intoxicating liquors at that certain place known as Brooklyn Cafe, and I do authorize said Seattle Brewing & Malting Co., for the better securing to it of the full payment of any and all indebtedness of any kind whatsoever that may be due it from me, to take possession and control, by any means convenient, and with as little expense to me as 'possible, of any claim or interest in any money growing out of the said license, or of any interest in said license. The said license herein intended to be treated as a collateral pledge for the better securing of my indebtedness to the said Seattle Brewing & Malting Co., and I do hereby waive any proceedings of foreclosure upon the same, and direct that upon my failure to pay my indebtedness to the said Seattle Brewing & Malting Co., as agreed by the oral understanding, and by the terms and conditions of the annexed notes by me made, the said Seattle Brewing & Malting Co. is then and there to take possession of all interest I have in any manner or form in said license, and take possession and control of the said license as the said Seattle Brewing & Malting Co., shall see fit, without expense and without suit, the license certificate being left in possession of the pledgee

herein for the purpose of complying with ordinance No. 4205. "Witness: Charles A. Thorndyke. (Signed) I. G. Morgan."

After the license was issued, a retail liquor saloon was conducted by authority of the license at the place therein described, by the firm of Stumpf & Morgan. On January 17, 1905, certain creditors of Stumpf & Morgan brought an action against them and attached all the property of the firm, including the saloon known as the Brooklyn Cafe, and took possession thereof. The retail liquor license was at that time hanging upon the wall of the saloon. On January 21, 1905, an agent of the Seattle Brewing & Malting Company obtained possession of the license certificate by taking it from the saloon. On January 26, 1905, respondent was appointed receiver of the assets of Stumpf & Morgan, and duly qualified, and thereupon demanded the possession of the license certificate, which was refused. The Brewing and Malting Company, on January 27, 1905, presented to the city a petition, signed by themselves and said Morgan, for a transfer of said license to one Nick Kennedy, and also asking for a change of location for the use of the license. The ordinances of said city provided for a transfer of an unexpired license, and for a change of location by consent of the city, upon application therefor, and upon the observance of certain formalities. The city was about to make the transfer, when the respondent, as receiver, brought this action for a restraining order and for possession of the certificate of license.

Appellants argue that the license, or the right to do business, in controversy is a personal privilege conferred by the city upon the licensee, and is not such property as is subject to debts of the licensee, and that none of the rights secured thereby can be enjoyed by the receiver; that the license is merely an intangible privilege. A number of the state courts have held in accord with this position of the appellants. See: *Voight v. Board of Excise Com'rs,* 59 N. J. L. 358, 36 Atl. 686; *Feigenspan v. Mulligan,* 63 N. J. Eq. 179, 51 Atl. 191; *State v. Lydick,* 11 Neb. 366, 9 N. W. 560, and cases

there cited; *Bonnie & Co. v. Perry's Trustee* (Ky.), 78 S. W. 208; Black, Intoxicating Liquors, § 130. This rule is based upon the idea that the right is a species of public trust conferred only upon those who possess certain qualifications; that it is a police regulation, and is therefore in no sense property. Under statutes which do not permit transfers of the license from one person to another, and where the right is a personal privilege only, we think the rule stated is undoubtedly correct. But where the statute recognizes the right of transfer from one to another, and where the right is a valuable right, capable of being surrendered and reduced to money, a different rule prevails. In such cases the license or right to do business becomes a valuable property right, subject to barter and sale. It is property with value and quality.

The United States courts have held that liquor licenses issued under statutes authorizing a transfer are assets of an estate under the bankruptcy act. *Fisher v. Cushman,* 43 C. C. A. 381, 103 Fed. 860; *In re Becker,* 98 Fed. 407; *In re Fisher,* 98 Fed. 89; *In re Brodbine,* 93 Fed. 643; *In re Gallagher,* Fed. Cas., No. 5,192. Mr. Black, in discussing these cases and the question involved in this action, in his note appended to the case of *Fisher v. Cushman, supra,* at page 392, says:

"If these questions [referring especially to franchises to collect tolls and the like] should again arise, it is probable that they would be decided in accordance with the rule laid down in regard to liquor licenses; the true test being found in the question whether the franchise or right is actually transferable, with the consent of the authorities and without any practical difficulty, and whether it has a market value and can be disposed of by sale."

This, it seems in reason, must be the correct rule. If a license to sell liquors is transferable, valuable, and is subject to sale, it is certainly not a merely personal privilege; but it has all the attributes of property except tangibility, and must be treated as property. *People v. Durante,* 45 N. Y. Supp.

1073.   In this case the ordinance under which the license was issued provided for a transfer of the license upon the observance of certain formalities about which there is no practical difficulty.   The license fee was $1,000, payable in advance and was so paid in this case.   The license was good for one year from its issue.   At the time the receiver took possession of the business, the license had run only about one month.   The license or right to do business, therefore, had a marketable value of about $900.   Under these circumstances the license was more than a personal privilege.   It was valuable personal property, and an asset of the firm of Stumpf & Morgan.

Appellants contend that the Brewing Company is entitled to the license under the contract or collateral pledge quoted above.   We think this contention is without force as against creditors.  The agreement was neither executed, acknowledged, filed, nor recorded as required by law, and the license certificate was left in possession of Stumpf & Morgan.   It has been held that a contract of this kind constituted an equitable mortgage which was not included within a statute requiring mortgages upon *"goods and chattels"* to be filed, upon the ground that a liquor license did not fall within the classification of goods and chattels, and would therefore be enforced. *Niles v. Mathusa,* 20 App. Div. 483, 47 N. Y. Supp. 38. Our statute, however, provides that "mortgages may be made upon all kinds of personal property" (Pierce's Code, § 6549), and "every such instrument, within ten days from the time of the execution thereof, shall be filed in the office of the county auditor" (Pierce's Code, § 6550).   No transfer of personal property shall be valid as against creditors where the property is left in possession of the vendor unless the bill of sale is recorded within ten days after such sale.   Bal. Code, § 4578.   We have held above that the license was personal property.   Whether we construe the contract as a bill of sale or a chattel mortgage, it did not conform to the statute in either event, and was void as to creditors.

It follows, upon the showing made, that the receiver was entitled to the possession of the certificate of license for the benefit of creditors, and that the court properly restrained the transfer thereof by the appellants. The order appealed from is therefore affirmed.

CROW, ROOT, DUNBAR, HADLEY, and FULLERTON, JJ., concur.