ROSE ANN COWAN, PLAINTIFF. v. ERVIN STORMS AND ANN STORMS, HIS WIFE, DEFENDANTS.

Argued July 11, 1938—Briefs submitted August 2, 1938—Decided November 3. 1938.

Before Justice HEHER, at the Passaic Circuit.

For the rule, *Edward Feld.*

*Contra, Robert J. McDermott.*

HEHER, J.   The rule directs defendant Ann Storms, plaintiff's judgment debtor, to show cause why her "interest" in the residuary estate of Henry Cowan, deceased, should not be sold to satisfy the judgment debt, and, "in the alternative, why the moneys due and accruing from said estate monthly" should not be so appropriated.

The will of the deceased Henry Cowan devised certain of his lands to his executors "during the lives" of his three children, Annie Swift, Lizzie Berdan and Wesley Cowan, "and during the life of the last survivor of them," in trust, "to manage, control and lease the same  *  *  *;  to collect and receive the rents, issues and profits therefrom," and, after payment of taxes, assessments, repairs, insurance premiums and other carrying charges, "to divide [the] net income among" said children, "in equal proportions;" and, upon the decease of any of the named children, leaving lawful issue, to pay "the share of said income which such deceased child would have received, if living,  *  *  *  to such issue, *per*

*stirpes."* It was further provided that, in case any of his said children should die "without leaving issue, or all of the issue of said child" should die "before the death" of his "last surviving child, * * * the share of the income which would have gone to" his "deceased child, or the issue of such deceased child," should "go to" his "child or children, or in case of their death, to their issue *per stirpes."*

Upon the decease of the testator's last surviving child, the *corpus* was devised thus: The issue of each child to take, *per stirpes,* one-third thereof; and, in case any of his said children should "leave no issue surviving them, at time of death of last surviving child, then the share which would otherwise have gone to the issue of * * * said deceased child," was given "to the issue of both of my other children *per stirpes."*

Wesley Cowan died leaving two children, viz.: the defendant Ann Storms and a son, Henry. Annie Swift and Lizzie Berdan are still living. The judgment debtor's share of the net income of the trust estate is said to amount to $90 monthly, but there is no proof of this. The sheriff levied upon "all the rights, credits, moneys and effects, goods and chattels, lands and tenements" of the judgment debtor, "to wit, one-sixth interest in the residuary estate of Henry Cowan and moneys due and accruing from the said estate monthly."

Plainly, the judgment debtor has an estate in remainder in fee in the *corpus,* vested as to an undivided sixth part thereof, and contingent as to the rest. The contention that her entire interest is contingent is patently unsound. She has a present absolute right to an undivided sixth part of the *corpus* the instant the particular prior estate shall cease. The distinguishing characteristic of a vested remainder is a present capacity to take effect in possession or enjoyment on the certain determination of the precedent particular estate, rather than the certainty of enjoyment by the remainderman. It is the uncertainty of the right of enjoyment, rather than the uncertainty of its actual enjoyment, that renders a remainder contingent. *Den* v. *Hillman,* 7 *N. J. L.* 180; *Den* v. *Crawford,* 8 *Id.* 90; *Price* v. *Sisson,* 13 *N. J. Eq.* 168; *affirmed,*

*sub nom. Weehawken Ferry Co.* v. *Sisson,* 17 *Id.* 475; *Voorhees* v. *Singer,* 73 *Id.* 532; *In re Clark's Estate,* 13 *N. J. Mis. R.* 393; 2 *Blk. Com.* 168.

As regards the estate in remainder, plaintiff asserts the right of execution only against the vested interest; and the question for decision is whether this is now a leviable and vendible interest. I find that it is.

At common law, due to the nature of the feudal tenure, the lands of a judgment debtor were not liable to execution and sale at the instance of a citizen creditor; they were subject to such seizure only for the satisfaction of a debt due the state or the crown. 23 *C. J.* 334.

And so we must have recourse to the statutes for the measure of plaintiff's right to subject the debtor's testamentary estate to the payment of her judgment. It is therein provided that "all real estate shall be liable to be levied upon and sold by executions to be issued on judgments obtained in any court of record in this state," with certain exceptions not here pertinent, and that the particular execution shall command the officer to whom it is directed, if sufficient goods and chattels cannot be found to "cause" the judgment debt "to be made of the real estate whereof" the judgment debtor "was seized on the day when such real estate became liable to such debt, * * * or at any time afterwards * * *." *R. S.* 1937, §§ 2:26-80, 2:26-97.1.

It is settled in this state that a vested remainder in fee is leviable and saleable before the termination of the precedent estate under an execution against the remainderman. It rises to the dignity of an estate in lands within the intendment of the statute. The possession of the tenant of the particular estate "is construed to be the possession of him in remainder, so that the remainderman is held to be seized of his remainder." *Den* v. *Hillman, supra.* It is the general rule that such remainders are subject to execution. 21 *C. J.* 979, 980; 23 *Id.* 335; 34 *Id.* 593. And it does not matter that the remainderman's interest is an undivided one. 17 *R. C. L.* 119. Such an interest is sufficiently certain and definite to permit of a fair appraisement and sale.

But it is likewise the insistence of plaintiff that the "income from the estate is also vested and therefore is subject to execution" in its entirety under sections 2:26-168 *et seq.* (*R. S.* 1937), while the judgment debtor maintains that, under sections 2:26-182 *et seq.,* plaintiff is entitled to no more than ten per cent. of the income.

It is clear that, in respect of the precedent life estate, the legal title is in the trustees; and it is an established doctrine in this state that, except as modified by statute, a trust estate is not liable to seizure and sale on execution at law. At law, in the absence of statutory provision, neither a judgment nor an execution issued thereon gives rise to a lien upon a mere equitable estate or interest. The interest of the *cestui que trust* is in such case reachable only in equity for the satisfaction of a judgment against him. *Halstead* v. *Davison,* 10 *N. J. Eq.* 290; *Hogan* v. *Jaques,* 19 *Id.* 123; *Linn* v. *Davis,* 59 *N. J. L.* 29; *Vancleve* v. *Groves,* 4 *N. J. Eq.* 330.

Thus it is that neither the equitable life estate of the judgment debtor nor the income itself is subject to seizure under the instant execution, unless made so by statute. A review of the pertinent legislation is therefore necessary.

Under the provisions of an act to prevent fraudulent trusts and assignments, adopted in 1850, authorizing discovery in aid of an unsatisfied execution, such trust funds were rendered liable to seizure at law in satisfaction of a judgment, through the medium of a receiver, only "where the trust" had "been created by, or the fund held in trust" had "proceeded from" the judgment debtor. *Pamph. L.* 1850, *p.* 301; *Pamph. L.* 1863, *p.* 31; *Rev.* 1877, *pp.* 393, 394. See *Linn* v. *Davis, supra.* By a supplement to this statute enacted in 1880, it was made applicable to trusts created by or which had proceeded from "some other person than the debtor himself," provided "the income of such trust property shall exceed four thousand dollars." *Pamph. L.* 1880, *p.* 274. These provisions were included in the compilation of 1895. *Gen. Stat.* 1895 (*Executions,* §§ 23, 24, 26, 43), *pp.* 1419, 1424.

Subsequent amendments, embodied in the compilation of 1910, enlarged the authority of courts of law with respect

to unsatisfied executions. While the provisions adverted to remained unaltered in so far as material to this inquiry, there was incorporated in section 24, by way of additional remedy, the provision that, should the examination of the judgment debtor disclose that he was entitled to or was in receipt of "an income or any property or money or things in action, held in trust" for him, "except such trust funds as" were then "exempt by law," then the judge granting the order of discovery could direct him "to make payments at stated periods in installments, and upon such terms and conditions as" the judge might deem advisable, "out of such income, on account of the said unsatisfied judgment." *Comp. Stat.* 1910, *pp.* 2250 *et seq.*

Then came the 1915 supplement to the Executions act of 1874. By that enactment, "rights and credits" of the judgment debtor were made subject to execution; and the term was defined to include "all rights and credits" liable to seizure under a writ of attachment issued against a non-resident debtor, and also those "of an equitable nature, except such trust funds as" were then "exempt by law." Provision was made for the appointment of a receiver; and that officer was vested with the title to the rights and credits so made liable to execution, and authorized to institute proceedings, at law or in equity, "to obtain such recovery or relief as the defendant would be entitled to if no execution had been issued," and directed to apply "the sums collected," less expenses and compensation, to the satisfaction of the judgment. It was also therein provided that, as to any debt due or accruing from a third person to the judgment debtor, the court might direct the garnishee and judgment debtor to show cause why the debt, in an amount sufficient to satisfy the execution, should not be paid to the officer holding the writ, "either in one payment or in installments, as the court or a judge shall deem just." The act then went on to provide that, in case it should be made to appear by affidavit that the judgment debtor was "entitled to," or was "in receipt of an income, other than from such trust funds as" were then "exempt by

law," the court might direct the judgment debtor to show cause why he should not be required "to make payments at stated periods, in installments (and upon such terms as the court or judge may direct) out of such income on account of the execution," and, upon the return thereof, "make an order for such payments as aforesaid," and, at any subsequent time, "modify the terms thereof as may be just." This measure was approved on March 30th, 1915. *Pamph. L., ch.* 115, *p.* 182.

On April 12th ensuing, a further supplement to the Executions act of 1874 was adopted. It provided that, "where any wages, debts, earnings, salary, income from trust funds, or profits" were "due and owing to the judgment debtor," or should "thereafter become due and owing to him, to the amount of eighteen dollars or more per week," and execution upon the judgment had been returned unsatisfied, the judgment creditor was entitled of right to "an order directing that an execution issue against the wages, debts, earnings, salary, income from trust funds or profits of said judgment debtor," to "become a lien and a continuing levy" thereon "to the amount specified therein," not to "exceed ten per centum unless the income of said debtor" should "exceed the sum of one thousand dollars per annum, in which case the judge" might "order a larger percentage," until the execution was fully satisfied. It was therein directed that only one such execution should "be satisfied at one time." *Pamph. L.* 1915, *ch.* 266, *p.* 470. In 1916, this amendment was re-enacted with a modification not here apposite. *Pamph. L., ch.* 113, *p.* 242.

These enactments (chapter 115 of the laws of 1915, *supra,* and chapter 113 of the laws of 1916, as amended by chapter 102 of the laws of 1933, *Pamph. L., p.* 210) were embodied in the current revision without relevant material change. *R. S.* 1937, 2:26-168 *et seq.;* 2:26-182 *et seq.* And so were sections 23, 24 and 26 of the Executions act of 1874, amended by chapter 99 of the laws of 1933 to dispense with the prerequisite of an execution. *Pamph. L.* 1933, *p.* 204; *R. S.* 1937, 2:26-148 *et seq.* All these acts are remedial in nature,

and are therefore to be liberally construed. See *Harcum* v. *Greene,* 111 *N. J. L.* 129. It is to be observed that the quantitative limitation, as regards trust funds not proceeding from the debtor himself, was omitted from the statutes rendering income from trust funds liable to an installment execution; and it has also been excluded—deliberately, it would seem—from the current revision. *R. S.* 1937, 2:26-148 *et seq.*

The true sense of these statutory provisions, taken and compared together in the light of their history and common law background, is that where, as here, the trust fund has not emanated from the judgment debtor himself, the income is subject only to partial appropriation in consonance with the statutory scheme. Where the debtor is not the author of the fund, the creditor is not entitled either to a sale of the equitable interest or the whole of the income therefrom. These provisions are in *pari materia,* and so are to be construed as a harmonious whole, each viewed as an integral part of a general scheme, and therefore qualified by kindred provisions. In the search for the essential legislative purpose, it is to be borne in mind that, as respects the exception of trust funds then "exempt by law" annexed to the provisions relating to income, the exemption provision of the act of 1880, *supra,* was in force at the time of the insertion of this qualifying clause in section 24 of the Executions act, *supra,* and the adoption of chapter 115 of the laws of 1915, *supra,* containing a like qualification; and that it was not carried into chapter 266 of the laws of 1915, or the amendment thereof enacted in 1916, *supra.* And, as stated, chapter 183 of the laws of 1880, *supra,* was discarded by the legislature in its recent revision of the statutes.

While there is no occasion to consider the scope of the judgment creditor's remedy where the debtor is himself the source of the trust fund sought to be reached, it will not be amiss to point out that a construction limiting the creditor in such a case to the statutory provisions for partial appropriation of income would put a premium on unconscionable and fraudulent evasion of one's debts and obligations. The inclusion of sections 23, 24 and 26 of the Executions act of 1874, as

amended and supplemented in the particulars herein stated (*Comp. Stat.* 1910, *pp.* 2249 *et seq.*), in the Revision of 1937, without essential modification germane to this inquiry (sections 2:26-148 *et seq., R. S.* 1937), would seem to be determinative of the question of implied repealer by the subsequent enactments. It is the general policy of the law to afford the creditor reasonable means for the enforcement of his claim, and to lend no assistance to the debtor who, though able to pay, seeks to evade his obligation; and these statutes are to be construed in the light of that policy. *Passaic National Bank and Trust Co.,* v. *Eelman,* 116 *N. J. L.* 279.

It results that plaintiff may resort to the debtor's vested remainder in the *corpus* and her interest in the income of the particular estate, limited as provided by statute, for satisfaction of the judgment debt. Proof may be submitted as to the *quantum* of the income; and I shall then hear counsel on the terms of the order to carry out these conclusions.