68 N.J. Super. 533 (1961)
173 A.2d 39
MARGARET McCRAY, PLAINTIFF,
v.
LEONID CHRUCKY AND JOHN J. CIAMPI, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided August 1, 1961.
*534 Mr. Pearce R. Franklin argued the cause for plaintiff.
Mr. Charles Handler argued the cause for defendant Ciampi.
CRANE, J.C.C.
This matter is before the court on the return of an order to show cause procured by defendant Ciampi who seeks to restrain the plaintiff from taking any action under a levy and execution upon defendant's taxicab and the municipal license of the City of Newark to operate the taxicab. The defendant also sought to restrain the execution upon certain radio equipment in the taxicab. Both parties, however, have agreed that the radio equipment is the property of the Brown and White Cab Association, thus no further attention need be devoted to that aspect of the case.
*535 The defendant argues that the taxicab license is not property or a right or credit which can be levied upon in an execution.
Plaintiff recovered a judgment in a personal injury negligence action against Ciampi in the sum of $17,000. The factual details are contained in the Appellate Division's opinion, affirming the judgment, reported at 66 N.J. Super. 124. Evidently, the defendant carried only the mandatory $10,000 liability insurance coverage required by statute, N.J.S.A. 48:16-3, and the Newark municipal ordinance, sec. 31.36.2, thus plaintiff is seeking to recover the balance by execution.
The statutes governing execution permit a levy to be made upon property of every nature and description. Specific mention is made of real property, goods and chattels, N.J.S. 2A:17-1; rights and credits, N.J.S. 2A:17-57; and property, real and personal, N.J.S. 2A:26-2. The courts are enjoined to regard statutes of this type as remedial in nature and to construe them liberally in favor of creditors and claimants. Cowan v. Storms, 121 N.J.L. 336, 342 (Sup. Ct. 1938); N.J.S. 2A:26-1. Concerning statutory remedies in aid of enforcing judgments, it has been said that,
"* * * it is the general policy of the law to lend the creditor all reasonable assistance for the enforcement of his claim, especially against a debtor who, though possessed of the means to pay, seeks to evade his obligation." Passaic National Bank, etc., Co. v. Eelman, 116 N.J.L. 279, 286 (Sup. Ct. 1936).
Bearing the above mentioned approach in mind, the specific inquiry is whether a taxicab license in the City of Newark is property or a right or credit within the meaning of the statutes governing executions.
In order to assist the court in its determination, testimony was taken relative to the practices of the municipal licensing agency. Mr. Nathaniel Ross, Chief Clerk of the License Division, testified that he had been employed in the License *536 Division for 31 years; that the ordinance limits the number of licenses to 600; and that, at least since 1946, the number of licenses has always been maintained at 600. Mr. Ross said that there never had been any actual revocations although the ordinance provides for revocations; that he recalled one occasion on which a licensee, who had been convicted of a crime, was permitted to sell and transfer his license to another individual in lieu of revocation. He further testified that during his tenure transfers amounted to 50 to 75 a year. On cross-examination, Mr. Ross said that each transferee is investigated by the Police Department before the transfer is approved. If the transferee does not qualify, the transfer is refused and made to another designated by the transferor who does qualify. He further said that a person intending to go into the taxicab business in Newark would have to seek out someone already licensed, make a bargain for transfer of the license, and then have the transfer approved by the License Division.
The ordinance of the City of Newark, adopted pursuant to R.S. 48:16-2, et seq., was introduced in evidence. Its pertinent parts provide that an applicant for a taxicab license must disclose his name and address, the year, passenger capacity, type and model of vehicle for which the license is desired, and such further information as the supervisor of the City of Newark may require. Sec. 31.36.4. If the supervisor finds the applicant is fit, willing and able to perform such public transportation, considering the applicant's character, experience and responsibility, he shall issue the license. Sec. 31.36.5. Suspension and revocation are provided for violations of Newark city ordinances or state or federal laws which reflect unfavorably upon the fitness of the holder to offer public transportation. Sec. 31.36.7.
The section on Transfer, 31.36.6, is quoted in full as follows:
"No taxicab license may be sold, assigned or otherwise transferred without the consent of the supervisor. Any license may be transferred to another, to be used in the bona fide operation of a taxicab *537 business, with the consent of the supervisor upon the filing of an application as provided in section 31.36.4 of the ordinance and upon payment of a transfer fee of $10.00, provided, however, no transfer may be made in the month of November. No taxicab license shall be assigned, mortgaged, pledged or otherwise transferred to secure a debt, loan, advance or other financing transaction."
During the course of oral argument, counsel agreed that taxicab licenses are freely bought and sold in the City of Newark subject to municipal approval, and that many owners have arrangements with drivers whereby the drivers pay the owners a stated sum, $8 or $9, for operating the cab for every 12-hour shift, the driver retaining all of the fares and tips, and paying for the gas and oil. See Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. 1958).
The New Jersey case most nearly in point is that of Hart v. Seacoast Credit Corp., 115 N.J. Eq. 28 (Ch. 1933), affirmed 116 N.J. Eq. 573 (E. & A. 1934), in which it was held that a municipal consent or franchise to operate auto buses was subject to levy and execution even though the transfer was subject to approval of the Board of Public Utility Commissioners. Vice Chancellor Bigelow said, at 115 N.J. Eq. 30,
"The only public interest in a sale of bus franchises is that the purchaser be willing and able to operate bus lines in an efficient manner. This policy is served by requiring that the transfer be approved by the utility commissioners; subject to such approval, the holder of the franchises may sell them to anyone he pleases and for any price. I see no reason grounded in public policy why the franchises should not be sold on execution and so I conclude that they can be sold."
Counsel for the defendant Ciampi argues that a Newark taxicab license differs from a bus franchise. He argues that it is a mere personal privilege having none of the characteristics of property or of rights or credits.
In this as well as other jurisdictions the cases dealing with the subject of whether a license is a property right have differed. We must distinguish first those cases dealing *538 with non-exclusive licenses of a purely regulatory nature which citizens may enjoy as of common right. In this category are cases such as Garford Trucking, Inc. v. Hoffman, 114 N.J.L. 522 (Sup. Ct. 1935), cited by defendant, dealing with truck registrations. Also included within this category is Stewart v. District of Columbia, (not officially reported) 35 A.2d 247 (D.C. Mun. Ct. App. 1943) which dealt with a license to drive a cab. The court referred to such a license as a "character license" which is personal and not transferable.
Generally, licenses which grant a right to engage in a business to the exclusion of others and which are capable of being transferred have been held to possess characteristics of property. For example, in Deggender v. Seattle Brewing & Malting Company, 41 Wash. 385, 83 P. 898, 4 L.R.A., N.S., 626 (Sup. Ct. 1906), it was held that a license to sell intoxicating liquors which by statute was transferable was property which a receiver could reach and sell for the benefit of creditors. The court said, at 83 P. 899, at 4 L.R.A., N.S., 628,
"* * * Under statutes which do not permit transfers of the license from one person to another, and where the right is a personal privilege only, we think the rule stated is undoubtedly correct. But where the statute recognizes the right of transfer from one to another, and where the right is a valuable right, capable of being surrendered and reduced to money, a different rule prevails. In such cases the license or right to do business becomes a valuable property right, subject to barter and sale. It is property with value and quality."
Similarly Rowe v. Colpoys, 78 App. D.C. 75, 137 F.2d 249, 148 A.L.R. 488 (Ct. App. D.C. 1943), certiorari denied 320 U.S. 783, 64 S.Ct. 190, 88 L.Ed. 470, held that a liquor license, which by the terms of the statute authorizing its issuance was transferable, was subject to levy under execution. The court distinguished licenses the transfer of which public policy would forbid, such as professional licenses where the personal probity and professional skill of *539 the individual were of paramount importance and corporate franchises where matters of convenience and sovereignty were involved. To the same effect is Appeal of Cordano, 91 Conn. 718, 101 A. 85 (Sup. Ct. Err. 1917) wherein it was said, at 101 A. 87,
"Our law recognizes to the fullest extent the quality of property in a license. It is property having a recognized pecuniary value and the subject of sale, attachment, levy, or replevy."
It has also been held that a liquor license is property within the meaning of the due process clause of the Federal Constitution. Midwest Beverage Co. v. Gates, 61 F. Supp. 688 (D.C.N.D. Ind. 1945). Feigenspan v. Mulligan, 63 N.J. Eq. 179 (Ch. 1902), affirmed 64 N.J. Eq. 792 (E. & A. 1902), cited by defendant, cannot be regarded as controlling since the statutes upon which it was based have long since been repealed and superseded by an entirely new and comprehensive system of statutory regulation, N.J.S.A. 33:1-1, et seq., including specific provisions governing operation and transfer by receivers and trustees. The court will additionally take notice of the fact that judicially sanctioned sales are frequently held by receivers and trustees in bankruptcy as well as assignees for the benefit of creditors in which liquor licenses are sold. It is significant that the Legislature has recognized at least some property characteristics pertaining to liquor licenses by the following language of N.J.S.A. 33:1-26,
"* * * Under no circumstances, however, shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except to the extent expressly provided by this chapter."
It is also significant that the prohibition against attachment and levy found in N.J.S.A. 33:1-26 is not found in the statutes or ordinance dealing with taxicab licenses.
*540 The general principle extracted from the cases in this as well as other jurisdictions seems to be that where a license is related to personal character or skill and is not transferable, it is regarded as a mere privilege and, as such, is not subject to levy and execution. Where, however, a license, although related to personal character or skill, is transferable and it creates an exclusive valuable right to engage in a trade or business not available generally to citizens in common, the courts have held that the license is a property right and is subject to levy and execution.
One case appears to be almost directly in point to the contrary. That is Elson v. Nyhan, 45 Cal. App.2d 1, 113 P.2d 474 (Dist. Ct. App. 1941), in which it was held that the trial court did not abuse its discretion in refusing to appoint a receiver for the sale of a license to operate motor vehicles for hire. The opinion seems to have been based primarily upon testimony that it was the policy of the Police Commissioner to refuse to recognize involuntary transfers. Such action, of course, would not be tolerated in New Jersey. Our courts have held that licensing authorities must exercise their functions without resort to arbitrary or capricious action. Cutaio v. Bd. of Health of Elizabeth, 36 N.J. Super. 565 (App. Div. 1955).
Undoubtedly, the right to engage in the taxicab business in Newark is a valuable one. It entitles the holder thereof to earn income to the exclusion of competition from all but his fellow licensees. The license is expressly made transferable by the terms of the municipal ordinance, and the practices of the owners of taxicab licenses in Newark and the licensing authorities indicate that the license is regarded practically as valuable property. Finding no inhibition against levy or execution grounded in legislation or public policy, we hold that the license may be sold by the sheriff under levy and execution, subject of course to approval of the transferee by the municipal licensing authority. To hold otherwise would recognize a species of judgment-proof *541 property capable of producing continuing income but sheltered and protected from judicial process.
One final point requires attention. The defendant argues that the provision of the ordinance that the license may not "be assigned, mortgaged, pledged or otherwise transferred to secure a debt, loan, advance or other financing transaction," sec. 31.36.6, prohibits a sale on execution. No such intention is gathered from the quoted language. Rather an intention to prohibit divided legal and equitable ownership to the end that those engaged in the taxicab business be financially stable and free from outside control is perceived.
An appropriate order may be submitted.