**FIRST PENNSYLVANIA BANK, N. A.**

v.

**WILDWOOD CLAM COMPANY, INC. and Wildwood Two Corporation and West P. Woodbridge, Jr.**

**Civ. A. No. 82–0037.**

United States District Court, E. D. Pennsylvania.

March 29, 1982.

of its rights and specific performance as to the proceeds from the sale of a New Jersey clamming license by defendant Wildwood Two Corporation. Defendant Wildwood Clam Company, Inc. is the parent of Wildwood Two Corporation (hereinafter collectively referred to as "Wildwood"), and defendant West P. Woodbridge, Jr. ("Woodbridge") signed a loan agreement with First Pennsylvania as President of both corporations. Defendant corporations are citizens of New Jersey. Woodbridge is a citizen of New York. Plaintiff is a national bank whose principal place of business is in Pennsylvania. Jurisdiction exists by reason of diversity of citizenship. 28 U.S.C. §§ 1332, 1348. Before the court is First Pennsylvania's motion for a preliminary injunction. The parties filed a stipulation of facts and agreed to consolidate the hearing of this application with that for a final judgment pursuant to Fed.R.Civ.P. 65(a)(2).

The facts as stipulated are these. On April 19, 1979, First Pennsylvania and Wildwood entered into a Term Loan Agreement ("TLA") with respect to a term loan of $600,000 and an additional discretionary loan of $100,000. On September 26, 1979, an additional $50,000 was advanced by First Pennsylvania pursuant to an amendment to the TLA.[1]

Under Section 4.03 of the TLA, First Pennsylvania took, as collateral for the loans, a security interest in, among other items, general intangibles "whether now owned or hereafter acquired, together with all replacements therefor or proceeds." Proper financing statements were filed with the Secretary of the State of New Jersey and the Clerk of the Court of Cape May County. At the time the TLA was executed Wildwood possessed a "Commercial Boat License to Dredge Sea Clams," issued by the State of New Jersey for a fee of $395.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff.

John P. Beyel, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, Newark, N. J., for defendants.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

### BACKGROUND

Plaintiff First Pennsylvania Bank, N.A. ("First Pennsylvania") seeks a declaration

---

1. Another action before this court arises out of personal guarantees on the loan made by Woodbridge and other individuals. *See, Woodbridge v. First Pennsylvania Bank, N.A.*, Civil Action No. 81–688. However, by their stipulation and arguments the parties have limited this action to the narrow issue of whether First Pennsylvania has an enforceable security interest in the clamming license and its proceeds.

The loans to Wildwood were subsequently declared in default and accelerated. On December 23, 1981, Wildwood's clamming license was sold to a third party for the sum of $35,250.[2] The parties agree that their rights to the proceeds are the same as the license had it not been sold, but they disagree on whether First Pennsylvania has a security interest in the license. First Pennsylvania claims the license is included in the general intangibles pledged as collateral by Section 4.03 of the TLA. Wildwood contends that the clamming license is not a general intangible subject to a security interest. For the reasons stated below, we declare that First Pennsylvania did possess a perfected security interest in the clamming license and in the proceeds of its sale. Therefore, First Pennsylvania is entitled to the proceeds pursuant to Section 7.03 of the TLA.

### DISCUSSION

Wildwood's clamming license is a general intangible subject to First Pennsylvania's security interest under either Pennsylvania or New Jersey law.

A. *Pennsylvania Law:*

Section 8.08 of the TLA states:

*Applicable Law.* The substantive laws of the Commonwealth of Pennsylvania shall govern the construction of this Agreement and the rights and remedies of the parties thereto.

Section 1.01 of the TLA states that as used therein "general intangibles"

shall have the same respective meanings as are given to those terms in the Uniform Commercial Code of Pennsylvania.

The Pennsylvania Uniform Commercial Code ("UCC") defines intangibles to be "any personal property . . . other than goods, accounts, contract rights, chattel paper, documents and instruments." 13 Pa. Cons.Stat. § 9106. The UCC Comment for this section states:

The term 'general intangibles' brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance.

The parties have not offered, and we have not found, any Pennsylvania case law dealing with a commercial clamming license. However, a license for clamming is analogous to one for the sale of liquor which has been classified as a general intangible. *See, Tomb v. Lavalle,* 444 A.2d 666 (Pa.Super.1981). As a general intangible within the meaning of Article Nine of the UCC governing secured transactions, 13 Pa. Cons.Stat. § 9102, a clamming license may be subject to a security interest. *Cf., Bogus v. American National Bank,* 401 F.2d 458 (10th Cir. 1968) (liquor license subject to security interest). This is consistent with *Klingner v. Pocono International Raceway, Inc.,* 289 Pa.Super. 484, 433 A.2d 1357, 1361 (1981), where the court stated that bundles of rights evidenced by certificates such as a liquor license are subject to Article 9 interests. While a later case explicitly declined to express an opinion as to whether the state liquor code would permit recognition of a security interest in a Pennsylvania liquor license, *Tomb v. Lavalle, supra* at n.2, the implication was that a secured interest in a general intangible such as a liquor (or clamming) license could exist absent some supervening statutory prohibition.

B. *New Jersey Law:*

Defendants claim that New Jersey law applies and that New Jersey clamming licenses, like its liquor licenses, are not subject to security interests because state "policy interests" are implicated. This contention fails. The definition of general intangibles under New Jersey law is the same as that under Pennsylvania law cited above. *See,* N.J.Stat.Ann. § 12A:9–106. However, a New Jersey statute expressly forbids the

---

**2.** By Order of this court dated January 8, 1982, these proceeds are to remain in the trust account of counsel for defendants until further Order.

creation of security interests in liquor licenses. N.J.Stat.Ann. 33:1–26. No parallel statutory prohibition regarding clamming licenses exists. *See,* N.J.Stat.Ann. 50:2–6.1 *et seq.;* N.J.A.C. 7:25–12.1(F)(3), (4).[3] Similarly, in *McCray v. Chrucky,* 68 N.J.Super. 533, 173 A.2d 39 (1941), the court held that a municipal license to operate a taxi cab was a property right subject to levy and execution but not subject to a security interest because such an interest was expressly prohibited by ordinance of the licensing municipality. Absent an express statutory prohibition, there is no reason why a clamming license can not be the subject of a security interest under New Jersey law.

 Defendant claims that the clamming license was not transferable under New Jersey law at the time the TLA was executed; therefore, the license could not be personal property and the parties did not contemplate it to be subject to a security interest. Assuming *arguendo* that the license was not transferable when the TLA was executed,[4] the TLA and the related financing statements contain an after acquired property clause. Security agreements providing that obligations are secured by collateral acquired even after their execution are valid under the UCC in both Pennsylvania and New Jersey. 13 Pa.Cons. Stat. 9204(c); N.J.Stat.Ann. § 12A:9–204(3).

An appropriate Order will issue.

---

3. N.J.Stat.Ann. 50:2–6.1 provides:

No person or vessel shall take, harvest or dredge for sea clams (Mactra solidissima) also known as Spisula solidissima from any waters of this State without first obtaining a license from the commissioner. The commissioner may license every vessel engaged in the harvesting of sea clams within the waters of this State. Such license shall be issued on an annual basis.

Such licenses shall grant the privilege of gathering sea clams by dredging, but only in the Atlantic ocean, but not in the Delaware bay northerly of a line from Cape May Point lighthouse tower to Brandywine lighthouse or in the Sandy Hook bay west of a line from the west point of Sandy Hook to Roamer Shoal lighthouse. No boat or vessel shall be licensed under this act unless its bona fide owner is a resident of this State.

The commissioner may adopt regulations regarding the issuance procedures of such licenses.

The commissioner may issue permits for sea clam research, inventory and educational projects. Nothing in this section shall be construed to limit the activities of such projects.

N.J.A.C. 7:25–12.1(f)(3), (4) provides:

3. Transfer of Ownership:

A person transferring ownership of his licensed vessel may:

i. be issued a new license within one year for a replacement vessel or

ii. file a notarized Statement of Intent with the department indicating that he will waive all the rights and conditions of that license, not apply for a replacement license, and transfer the right to a license with the vessel to its new owner who shall meet all statutory criteria for licensing.

4. Transfer of License:

A right to a 1981 license may be transferred from one vessel to another provided that all statutory criteria for licensing are satisfied. A new 1981 license will be issued to the vessel with the acquired right after presentation of the transferrer's license and payment of the license fee. After June 1, 1982 a sea clam license cannot be transferred except as stated in 7:25–12.1(f)(3)(ii).

4. Under the New Jersey regulations in effect at that time, the licenses were transferable to a limited extent. Defendants' Memorandum, Ex. C, N.J.A.C. 7:25–12.1(f)(3).