IN RE GROVER C. McDONALD.

CARL ANDERSON ET AL., APPELLANTS, V. GROVER C. McDONALD, APPELLEE.

FILED OCTOBER 7, 1910. No. 16,733.

1. **Intoxicating Liquors:** ISSUANCE OF LICENSES. A license to sell intoxicating liquors is in the nature of a personal trust, and the applicant for such license must be a person competent, willing and intending himself to carry out such trust.

2. ———: ———. And where the evidence fairly shows that the one in whose name an application for such a license is made is not the real party in interest, but that such license is being sought for the purpose of enabling another to do business thereunder, it is the duty of the licensing board to refuse to issue such license.

3. ———: ———. Evidence examined and set out in the opinion *held* amply sufficient to show that the applicant in this case is not the real party in interest.

APPEAL from the district court for Gosper county: ROBERT C. ORR, JUDGE. *Reversed with directions.*

*Perry, Lambe & Butler,* for appellants.

*W. S. Morlan,* contra.

FAWCETT, J.:

On April 14, 1910, Grover C. McDonald filed with the clerk of the village of Elwood a petition praying for a license to sell malt, spirituous and vinous liquors in said village. A remonstrance was filed and overruled, and remonstrators appealed to the district court, where the action of the village board was affirmed. Remonstrators now appeal to this court.

Remonstrators urge four principal reasons why the license applied for should not have been issued. Having reached the conclusion that the third reason assigned is good, the others will not be considered.

The third reason assigned is that the applicant for a . license is not the real party in interest, but is simply a dummy for his brother, Edward L. McDonald. The rules of evidence were to some extent ignored by the licensing board on the hearing of this application, in this: that all objections were overruled. The result was that some evidence was received which ought to have been excluded. Considerable hearsay evidence was received, to which the only objection offered was that it was immaterial. In nearly all of those instances the objection was not good, and that evidence was properly received. The record, taken as a whole, and considering only the evidence properly received, fairly shows the following facts: That the building where the saloon business was to be carried on is situated on lot 3, block 20, in the village of Elwood; that E. L. McDonald, a man of mature years and a brother of the petitioner, is the owner of the lot, building and saloon furniture and fixtures; that he originally conducted the saloon business in said building, but, on account of his violation of the Slocumb law, he was unable in 1909 to obtain a license for himself; that he thereupon procured a license to be issued in the name of one William S. Darnell for that year; that during said year the said E. L. McDonald was in and about the saloon acting as proprietor, as one witness puts it: "Ed McDonald appeared to be the boss and owner"; that Darnell was arrested and prosecuted for a violation of the law, and E. L. McDonald employed counsel to defend him, and paid such counsel $100 for said service; that at the time applicant filed his petition with the clerk of the village board, E. L. McDonald accompanied him to the office, and at the same time filed a petition for a license himself; that these two petitions are signed by identically the same persons. One of them prayed that a license be issued to G. C. McDonald for the sale of liquor in the building above referred to, and the other that a license be issued to E. L. McDonald for the sale of liquors in the same building. E. L. McDonald signed the G. C. McDonald petition as signer No. 31, and

also signed his own petition at the same number. That during all the time Darnell was running the saloon during 1909 E. L. McDonald was in and about the saloon acting as if he were proprietor; that his actions were such as to lead those who frequented the saloon to believe that he was in fact proprietor; that during the year 1909, while the license was in Darnell's name, a boy under the age of 21 years visited the saloon; that at the time he was there E. L. McDonald was present and apparently in charge; that at said time this boy purchased intoxicating liquors, consisting of whiskey and beer, to such an extent that he became intoxicated; that E. L. McDonald about a year and a half prior to the hearing in this case had filed on a homestead of land in Canada, which homestead he had never relinquished; that during 1908 E. L. McDonald applied for a saloon license at Arapahoe, but, upon a remonstrance being filed, withdrew his application, and, through his own negotiations, obtained a lease to Grover C. McDonald for a saloon building; that a license was issued to Grover C.; that E. L. McDonald employed the bartenders in that saloon during the year the license was in the name of Grover C., and paid such bartenders monthly wages for running the saloon; that Grover C. McDonald is a young man somewhere from 20 to 23 years of age, and is without means sufficient to pay $1,000 for a license; that he has no fixed home, but is working here and there as opportunity may offer. The record is entirely barren of any evidence even tending to show that he, either in Elwood or Arapahoe, ever participated in the running of a saloon business, or that he has ever manifested the least intention to engage in such business, other than the mere fact that he permitted his name to be used by E. L. McDonald at Arapahoe, and that he went to the office of the secretary of the board in the present case, in company with E. L. McDonald, and handed the secretary the petition in controversy. No attempt is made to contradict or explain any of the foregoing testimony. We think the evidence shows, beyond a doubt, that E. L. McDonald had so con-

ducted himself that he was unable to obtain a license to sell intoxicating liquors, either in Elwood or Arapahoe; that he used Darnell in 1909 at Elwood, and his young brother, G. C. McDonald, at Arapahoe in 1908, and is now attempting to use him again for the current year in Elwood, all for the purpose of evading the law and obtaining the benefit of licenses which he himself could not obtain.

Conceding that, where bad faith is alleged by those opposing the granting of a license, the burden rests upon the remonstrators to introduce evidence tending to show that the applicant is not acting in good faith, this issue is to be tried as other issues of like character, and the ordinary rule should be applied that, when one who has a negative to prove has introduced evidence tending to prove it and the knowledge in regard to the matter in dispute and the evidence upon the question is wholly or largely in the possession of the other party, it devolves upon such party to produce the evidence at his command. This rule did not require conclusive evidence from the remonstrators in the first instance in order to put the applicant upon his proof as to those points; and, having failed to furnish such proof, if any he had, he must suffer the consequences of such failure. In this case the evidence introduced by remonstrators tends strongly to prove that the application of Grover C. McDonald was not made in his own interest, and that he had no intention of engaging in the saloon business in Elwood on his own account. This evidence, standing, as it does, without contradiction or explanation on his part, must be held to conclusively establish the fact that he is not acting in good faith and is not the real party in interest. It is taxing our credulity too much to ask us to say by a judgment of affirmance that G. C. McDonald is the real party in interest in the present case. The statutes of this state require that, before a license shall be issued, a petition must be presented, signed by 30 resident freeholders, setting forth that the applicant is a man of respectable character and standing and a resident of this

state, and praying that a license may be issued to him.
The statute does not mean that a man of respectable char-
acter and standing and a resident of this state, such as
G. C. McDonald may be, can permit his name to be used
by another, who is not a man of respectable character and
standing and a resident of the state, for the purpose of
conducting a business under a license which he himself
could not obtain. In the case of *In re Application of
Krug*, 72 Neb. 576, we held: "A license to deal in intoxi-
cating liquors is in the nature of a personal trust, and the
applicant for such privilege must be a person able, willing
and competent to carry out such trust, and not delegate
it entirely to others." We also held: "Under the provi-
sion of section 1, ch. 50, Comp. St. 1903, the licensing
board, upon the hearing of an application to grant a liquor
license, must pass upon the character and standing of the
applicant and his citizenship, and the board is without
authority to delegate these functions to another person or
corporation by issuing the license in the name of one
shown to be not the real party in interest, upon the under-
standing that such person or corporation will select a
person to conduct the business under the license." The
gist of that holding, it will be seen, is that the licensing
board must pass upon the character and standing of the
applicant and his citizenship, and that the board is with-
out authority to grant a license in the name of one shown
to be not the real party in interest. Speaking through
Mr. Chief Justice HOLCOMB in that case, we said: "The
undisputed evidence in this case discloses that the appli-
cant to whom the license was granted by the licensing
board was not the real party in interest. It is, by the evi-
dence submitted in support of the objections filed to the
granting of the license applied for, rendered manifest that
the business of dealing in intoxicating liquors for which
the license was granted was to be conducted under the un-
qualified control, ownership and proprietorship of a third
party, for whose sole and exclusive use and benefit the
license was being obtained. The only possible qualifica-

tion of absolute ownership of the business of owning and dealing in intoxicating liquors for the sale of which the license was granted is some evidence to the effect that the owner of the saloon would be required to conduct an orderly place of business. In principle, the case at bar comes altogether within the rule announced in *In re Tierney*, 71 Neb. 704." In *State v. Lydick*, 11 Neb. 366, speaking through Mr. Justice COBB, we said: "An examination of the above provisions of law can scarcely fail to satisfy any one that the people of this state have reserved to themselves, acting through the several local boards, county and city, the right to discriminate between the different applicants for liquor licenses, to license such applicants as upon the principles laid down should be deemed worthy, and refuse those who, upon the application of the same principles, should be held to be unworthy. A licensee, under the above provisions, accepts from the authorities a personal trust and assumes personal duties and responsibilities quite repugnant to the idea of his selling his license along with his stock on hand, furniture and fixtures. Under statutes much less discriminating than ours, it has been held by the courts of Kentucky, Indiana, Delaware, Alabama, Louisiana, Pennsylvania, New York, and other states, that a liquor license is a personal trust or permit, and is incapable of assignment." If, as there held, the granting of a license imposes on a licensee such a personal trust that he cannot, when he sells his business, transfer the license with it to another party, clearly he cannot in the first instance permit his name to be used as a mere dummy to procure the issuance of a license to one who could not obtain such license himself. To our minds, the case is so plain as not to require further discussion.

The judgment of the district court is therefore reversed and the cause remanded, with directions to reverse the decision of the village board and require that the license issued in this case be canceled; and that the costs be taxed to the petitioner.

REVERSED.