STATE *ex rel.* NIXON *et al. v.* McCANLESS, COM'R OF FINANCE
AND TAXATION OF TENNESSEE.

(*Nashville,* December Term, 1939.)

Opinion filed June 29, 1940.

WALKER & HOOKER, of Nashville, for plaintiff in error.

ROY H. BEELER, Attorney-General and W. F. BARRY and HARRY PHILLIPS, Assistant Attorneys-General, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a *mandamus* suit instituted by the State of Tennessee, on relation of Mrs. Claudie Nixon and Mrs. Mary F. Finn, referred to herein as relators, against George F. McCanless, Commissioner of Finance and Taxation of the State of Tennessee, hereinafter called the Commissioner, to compel the latter to issue to them a retail liquor dealer's license to engage in such business on Broad Street in the city of Nashville. The trial court held that the alternative writ of *mandamus* should be discharged and the peremptory writ sought denied. The relators are asking relief upon the ground that the Commissioner acted arbitrarily in declining to issue such license.

Prior to the filing of the petition herein the Commissoner, for cause, had revoked the retail liquor dealer's license previously held by the husbands of relators. Relators have complied with the preliminary requirements of Chapter 49, Public Acts of 1939, and by this proceeding propose to carry on the business formerly conducted

by their husbands at the same location and with the same stock of liquors, with the exception of case lots, which, with the consent of the Commissioner, have been returned to the wholesale dealer from whom they were purchased. Relators are twenty-eight and thirty years of age respectively, live with their husbands, and were not connected with the business formerly operated by their husbands. Mrs. Nixon has two children but testifies that she has made arrangements for some one to take care of her children in order that she may stay at the store a part of the time. Neither of these relators knows anything about the liquor business, and Mrs. Nixon has never had any business experience. When asked if she did not expect her husband and Mr. Finn to stay at the store and run the business, her reply was: "Well, I don't know. I am going to work there some myself."

■ Upon the foregoing facts we think the Commissioner was justified in concluding that this was a subterfuge by which the husbands of relators were endeavoring to continue the business by operating it in the name of their wives. In cases of this character the licensing authorities are vested with a large discretion in issuing licenses, and their decisions will not be interfered with unless it clearly appears that they have acted arbitrarily or illegally. *State* v. *Delk*, 175 Tenn., 614, 136 S. W. (2d), 524. The word "arbitrarily" means in an arbitrary manner; and in 6 C. J. S., Arbitrary, 145, the primary definition of the word "arbitrary" is "based alone upon one's will, and not upon any course of reasoning and exercise of judgment." Applying this definition to the facts of the case under consideration, it cannot be plausibly argued that the ruling of the Commissioner was not based upon any course of reasoning. When the relationship of the parties is considered in connection with the plight

of the husbands of relators in having their license revoked when they had a stock of liquors on hand and a lease on the building in which they were doing business which did not expire until sometime in 1941, the mind of any rationally minded person would naturally conclude that this is, in effect, an attempt on the part of the husbands of relators to do indirectly what they cannot do directly. In theory at least, and most likely in fact, in this particular case there is a unity between these consorts, the wives being under the dominion and control of their husbands.

In 30 C. J., 507, it is said: "At common-law husband and wife are in legal contemplation but one person, and the husband is that person, the legal existence of the wife being considered for most purposes as suspended during marriage and merged in that of the husband. Upon this principle of a union of person in husband and wife depend almost all the legal rights, duties, and disabilities that either of them acquires by the marriage."

While in a legal sense the wife has been emancipated in this jurisdiction, it may be reasonably inferred in a case of this character that the wives will be directed and controlled by their husbands, if, in fact, it is not the purpose of the husbands to actually conduct the business. It is not denied that the husbands will continue to work in this store.

A case very much in point is that of *Wilks* v. *Liquor Control Commission* (1937), 122 Conn., 443, 190 A., 262, 263. In that case the plaintiff, Mrs. Wilks, owned a building in the industrial section of Bridgeport, Connecticut. In 1935 the husband of plaintiff applied for a restaurant permit which was refused by the Liquor Control Commission upon the ground that between 1920 and 1930 he had been convicted six times for violating the prohibition

law. The husband thereupon withdrew his application and an application was filed by the wife. The Commission also denied her application upon the ground that she was an unsuitable person in view of the reputation of her husband. Upon appeal, the wife established, as in the case at bar, that she satisfied all the requirements of the law, and contended that the liquor law did not warrant the conclusion that a wife is an unsuitable person because of the employment of her husband upon the premises. In affirming the action of the Commission, it was said: ''It is self-evident that a person suitable per se to receive a permit may be rendered an unsuitable person, if, for example, he is completely subject to the domination of another who is himself an unsuitable person, in operating under it. The same is true of a person suitable to receive a permit, who in the operation under it becomes a permittee in name only in order to enable the real party in interest who is an unsuitable person in fact to control and carry on the business for himself. Therefore, where the commission has ground for believing that an applicant, though himself a suitable person, will be rendered an unsuitable permittee through either the domination, or the exclusive operating interest, or both, of another who is unsuitable, it can with reason deny the application. So it might in the exercise of its discretion hold one to be unsuitable as a permittee who employs a person in the active conduct of the business whose reputation is such as to make it likely that he will become a party to violations of the law.''

In *In Re McDonald,* 87 Neb., 618, 127 N. W., 888, the Supreme Court held that a liquor license should not be granted to an applicant whose brother was shown to be the real party in interest, when the brother by his previous conduct has disqualified himself to receive a license.

In *Lewis* v. *Commonwealth,* 140 Ky., 554, 131 S. W., 392, it was held that where a partnership license had been revoked, the subsequent application of one member of the firm for a license should be denied.

██ Upon the principle announced in the foregoing cases we think the Commissioner in the instant case exercised a sound discretion in declining to issue a license to relators, and that in so doing he was not acting arbitrarily or capriciously.

██ Another ground upon which petitioners should be denied relief was the refusal of the trial court, in the exercise of his discretion, to grant the writ of *mandamus.* Relators were not entitled to the writ as a matter of right, but only where the trial court, in the exercise of a sound discretion, saw proper to issue it. *State* v. *Delk, supra; Harris* v. *State,* 96 Tenn., 496, 34 S. W., 1017; *Memphis Appeal Pub. Co.* v. *Pike,* 56 Tenn. (9 Heisk.), 697; 38 C. J., 547. In our opinion the trial court did not abuse his discretion.

For the reasons stated herein the judgment of the trial court will be affirmed.