## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**February 1, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | |
|---|---|
| CARL G. BERNING, | ) |
| | ) |
| Petitioner/Appellant, | ) |
| | ) Appeal No. |
| | ) 01-A-01-9804-CH-00180 |
| VS. | ) |
| | ) Davidson Chancery |
| | ) No. 97-129-I |
| STATE OF TENNESSEE, | ) |
| DEPARTMENT OF CORRECTION, | ) |
| | ) |
| Respondent/Appellee. | ) |

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

WILLIAM KENNERLY BURGER
SunTrust Bank Building, Suite 306
201 E. Main Street, P. O. Box 1969
Murfreesboro, Tennessee 37133-1969
    Attorney for Petitioner/Appellant

JOHN KNOX WALKUP
Attorney General and Reporter

WILLIAM J. MARETT, JR.
Assistant Attorney General
425 Fifth Avenue, North
Nashville, Tennessee 37243-0490
    Attorney for Respondent/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
TODD, J.

# O P I N I O N

The Tennessee Civil Service Commission upheld the termination of a veteran supervisory employee for sexual harassment, conduct unbecoming a state employee, and failure to maintain a satisfactory and harmonious working relationship with fellow employees. The Chancery Court of Davidson County affirmed the Commission's order. On appeal the employee asserts that he was denied progressive discipline prior to termination, and that he was denied due process of law. On the strength of the proof, he also claims that his conduct does not fit the definition of "conduct unbecoming" or support a conclusion that he failed to maintain a harmonious working relationship, and that his conduct was constitutionally protected. We affirm the trial court.

## I.

Carl Berning, the manager of the Department of Correction's Murfreesboro probation office, was a twenty-three year state employee at the time of his termination in April of 1995. The charges against Mr. Berning surfaced in an anonymous letter to the Department alleging sexual harassment conditions in the Murfreesboro office, which created a stressful work environment for the employees. The Deputy Commissioner referred the letter to Bobby Halliburton, an assistant commissioner in charge of community corrections, and asked Mr. Halliburton to talk to each person in the Murfreesboro office and to report the results.

Upon receiving Mr. Halliburton's report, the Deputy Commissioner requested an Internal Affairs investigation, and Mr. Halliburton placed Mr. Berning on administrative leave with pay. Following the Internal Affairs report, Mr. Halliburton notified Mr. Berning that he was facing disciplinary action and that a due process hearing would be held on April 18, 1995. After the due process hearing, Mr. Halliburton terminated Mr. Berning, and Mr. Berning requested a hearing before the Civil Service Commission.

An administrative law judge conducted the hearing in March of 1996 and filed a twenty-seven page order. After making extensive findings of fact, the ALJ concluded that the facts justified Mr. Berning's dismissal. The initial order became final on November 12, 1996. Mr. Berning appealed to the Chancery Court of Davidson County and the chancellor upheld the dismissal.

## II.

## PROGRESSIVE DISCIPLINE UNDER THE TENNESSEE PERSONNEL LAWS

Mr. Berning asserts that state statutes and regulations compel the implementation of progressive discipline prior to termination. He relies on the provisions of Tenn. Code Ann. § 8-30-330(a) and (c):

> (a)     The supervisor is responsible for maintaining the proper performance level, conduct, and discipline of the employees under the supervisor's supervision. When corrective action is necessary, the supervisor must administer disciplinary action beginning at the lowest appropriate step for each area of misconduct.
>
> . . .
>
> (c)     When corrective action is necessary, the supervisor must administer disciplinary action beginning at the step appropriate to the infraction or performance. Subsequent infractions or poor performance may result in more severe discipline in accordance with subsection (a).

In addition, the Rules of the Department of Personnel mirror the statutory requirements. *See* Rule 1120-10-.07 Tenn. Register.

The legislative mandate should be scrupulously followed, and we have expressed our approval of the use of progressive discipline in other settings, *Adams TV of Memphis vs. IBEW*, No. 02A01-9410-CV-00225 (Jackson April 29, 1996); *Allen v. Neel*, No. 87-255-II (Nashville March 9, 1988), but the key word in the statute is "appropriate." As the chancellor concluded, "the language of these provisions does not mandate application of discipline in a routine fashion without regard to the nature

or severity of the behavior it is intended to address. The supervisor has discretion to determine what punishment fits the offense."

Since Mr. Berning has attacked the appropriateness of the punishment in another section of his brief, we will defer our discussion of whether under the facts in this record termination was appropriate.

## III.

### DUE PROCESS

#### A. THE ANONYMOUS LETTER

Mr. Berning insists that he was denied due process because the investigation against him was launched on the basis of an anonymous letter. He does not cite any authority for that position except this excerpt from Tenn. Code Ann. § 8-30-222(c):

> (c) No employee of the department, examiner, or other person shall defeat, deceive or obstruct any person in such person's right to examination, eligibility, certification or appointment under this chapter, or furnish to any person any special or secret information for the purpose of affecting the rights or prospects of any person with respect to employment in the career service.

We, however, reject the contention that this statute prevents a department of the State from launching an investigation based on anonymous sources. If Mr. Berning's termination had been based on the letter, he would have had a compelling argument, but the facts in the letter itself are not cited in the ALJ's order or in the chancellor's memorandum.

#### B. VAGUENESS AND DELAY

Mr. Berning alleges that he was denied due process because of the absence of detailed times, places, and other pertinent facts concerning the charges.

Tenn. Code Ann. § 8-30-331(b)(1). The record reflects that the initial charges against Mr. Berning included allegations of inappropriate sexual conduct occurring over a period of five or six years, and involving five of his female employees. Prior to the hearing before the ALJ, the list was supplemented with a list containing ten names and relating graphic details of Mr. Berning's conduct on specific occasions.

Mr. Berning does not specifically point out how he was prejudiced by any alleged lack of details of the time and place of his transgressions. We think the information given him prior to the hearing satisfied the requirements of due process.

It is true that the charges against Mr. Berning covered a period of several years. It is also true that the Department received word of a specific charge by another female employee in 1991 or 1992, and that the Department took no action at that time. In the meantime, certain Departmental records have been lost or routinely destroyed. The ALJ, however, found that much of the conduct Mr. Berning asserts he could have rebutted through time records or other documents was conduct he either admitted or did not deny. The chancellor also found that most of the offensive conduct involved only Mr. Berning and the victim. So, the lack of any records did not unduly prejudice Mr. Berning.

After a review of the record, we add our conclusion that Mr. Berning's due process rights were not violated by the fact that some of the Department's records had been discarded.

### c. AN UNBIASED INVESTIGATOR

Mr. Halliburton, the Assistant Commissioner who conducted the initial investigation and placed Mr. Berning on administrative leave, also conducted the due process hearing provided by Tenn. Code Ann. § 8-30-331. After that hearing Mr.

Berning was terminated. Mr. Berning alleges that Mr. Halliburton had a special relationship with Crystal Durham, who was one of Mr. Berning's principal accusers, and who was bitter over being denied a promotion.

There are facts in the record from which one could infer that Crystal Durham did indeed have a grudge against Mr. Berning, and that Mr. Halliburton and Crystal Durham had a close relationship. From those inferences one might also infer that Mr. Halliburton had decided to be unfair to Mr. Berning and that his participation in the disciplinary proceedings violated Mr. Berning's basic due process rights.

That determination, however, is committed in the first instance to the Civil Service Commission. Tenn. Code Ann. § 8-30-331(c) provides that, "The commission shall determine as a preliminary matter to the merits of a grievance, a grievant's allegation of denial of minimum due process." Mr. Berning raised that issue before the Commission, and the ALJ made the following finding and/or conclusion: "Mr Halliburton was a better friend with the grievant (Mr. Berning) than with Ms. Durham and is not found to have acted anything other than impartially in the actions he took." The record does show that Mr. Berning and Mr. Halliburton were close friends, and Mr. Berning does not point to any specific act on Mr. Halliburton's part that demonstrates his bias or prejudice. All we have are the inferences that might be made. Since the ALJ declined to infer any bias or prejudice on Mr. Halliburton's part and the finding of Mr. Halliburton's friendship with Mr. Berning is supported by substantial and material evidence in the record, *see* Tenn. Code Ann. § 4-5-322(h)(5), we think the ALJ's conclusion must be sustained. The chancellor made the same judgment.

## IV.

### THE EVIDENCE

#### A. SEXUAL HARASSMENT

Mr. Berning admits that his conduct was in poor judgment and bad taste, but he argues that it does not meet the definition of sexual harassment. The Tennessee Department of Personnel policies defined sexual harassment in the following way:

1. Sexual harassment is a violation of Title VII of the Civil Rights Act of 1964 and it is against the policies of the State of Tennessee Department of Personnel for any employee, male or female, to sexually harass another employee by:

    a. Making unwelcomed sexual advances or requests for sexual favors or other verbal or physical conduct of a sexual nature as a condition of employment, or continued employment, or

    b. Making submission to or rejections of such conduct the basis for administrative decisions affecting employment, or

    c. Creating an intimidating, hostile or offensive working environment by such conduct.

2. Sexual harassment does not refer to behavior or occasional compliments of a socially acceptable nature. It refers to behavior that is not welcome, that is personally offensive, that fails to respect the rights of others, that lowers morale and that therefore, interferes with our work effectiveness. Sexual harassment may take different forms. One specific form is the demand for sexual favors. Other forms of harassment include:

    • <u>Verbal</u> - Sexual innuendos, suggestive comments, jokes of a sexual nature, sexual propositions, threats.

    • <u>Non-Verbal</u> - Sexually suggestive objects or pictures, graphic commentaries, suggestive or insulting sounds, leering, whistling, obscene gestures.

    • <u>Physical</u> - Unwanted physical contact, including touching, pinching, brushing the body, coerced sexual intercourse, assault.

Sexual harassment may be overt or subtle. Some behavior which is appropriate in a social setting may not be appropriate in the work place. But whatever form it takes, verbal, non-verbal or physical, sexual harassment can be insulting and demeaning to the recipient and will not be tolerated in the work place.

Sexual harassment by any employee, director, supervisor, or non-employee will not be tolerated. All employees, directors, supervisors and non-supervisors alike, will be expected to comply with this policy and take appropriate measures to ensure that such conduct does not occur.

The ALJ made eighty-six findings of fact, filling nineteen legal-sized pages of type, detailing the atmosphere in the Murfreesboro office and Mr. Berning's role in it. The ALJ found that Mr. Berning "set the tone by telling dirty jokes, and by making comments to women of a sexual nature." Although the record shows that many women in the office tolerated Mr. Berning's behavior and even engaged in telling bawdy stories themselves, the ALJ details the deleterious effect of Mr. Berning's behavior on many of his employees. The chancellor summarized the numerous findings in the following way:

A common scenario described involved the petitioner being alone with a female employee; steering the conversation toward his interest in oral sex; graphically describing the act; and propositioning the female employee to allow him to perform the described act on her. Several employees testified that the petitioner inappropriately touched them: sliding his hand between two buttons of one woman's dress at her midriff; pinning one woman against a desk as he attempted to kiss her; and rubbing his thumb across one woman's nipple.

. . . .

As a result of the petitioner's behavior, many of the employees testified that they began to avoid him, even when their work required them to interact with the petitioner. One employee stated that the petitioner's behavior caused her so much stress that she began to take her work home with her and report to the office only when she knew the petitioner would not be there. At least three employees resigned and one volunteer quit because of the plaintiff's behavior. A prospective employee refused to report for an interview because of statements the petitioner made to her during telephone calls he inappropriately made to her.

We concur in the chancellor's assessment of the evidence. Having come to that conclusion, we cannot see how Mr. Berning could seriously contend that his conduct did not amount to sexual harassment.

## B. CONSTITUTIONAL PROTECTION

Finally, Mr. Berning argues that the Commission's action violated his right to free speech under the United States Constitution (Amendment I) and the Tennessee Constitution (Article I § 19). Presumably his argument is that no matter how gross or intimidating his actions were, they fell within the scope of protected speech.

But even the seemingly absolute language of the First Amendment ("Congress shall make no law . . . abridging the freedom of speech") does not protect pornography nor obscenities. *Miller v. California*, 413 U.S. 15 (1973); *Roth v. U.S.*, 354 U.S. 476 (1957). Apparently it is so obvious now that the First Amendment is not a defense in sexual harassment cases that it is seldom raised. *See Burlington Industries, Inc. v. Ellerth*, _____ U.S. _____ (1998).

With respect to the Tennessee Constitution, we should pay careful attention to the words: "The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty." Art. 1 § 19 Tennessee Constitution. That provision protects speech and not conduct. *State v. Lakatos*, 900 S.W.2d 699 (Tenn. Cr. App. 1994). Where the protected speech is merely incidental to the offensive conduct, the Constitution does not provide a defense. *Id.* To the extent that Mr. Berning's conduct included unwelcome touching, fondling, and kissing of his employees, he cannot escape condemnation by claiming his rights of free speech.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
HENRY F. TODD, JUDGE