# FILED

**November 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| DAVID E. KELLY, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | Davidson Chancery |
| VS. | ) | No. 98-458-II |
| | ) | |
| THE TENNESSEE CIVIL SERVICE | ) | |
| COMMISSION and | ) | Appeal No. |
| THE TENNESSEE DEPARTMENT | ) | M1999-00168-COA-R3-CV |
| OF LABOR, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR

For the Plaintiff/Appellant:

Frank J. Scanlon
Watkins, McGugin, McNeilly & Rowan
Nashville, Tennessee

For the Defendants/Appellees:

Paul G. Summers
Attorney General and Reporter

William J. Marett, Jr.
Assistant Attorney General

# AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the two-day suspension of an employee of the Tennessee Department of Labor.  After the Tennessee Civil Service Commission upheld the suspension, the employee filed a petition for judicial review in the Chancery Court for Davidson County challenging the factual basis of the Commission's decision and asserting that the Department acted arbitrarily and capriciously.  The trial court, sitting without a jury, affirmed the suspension.  On this appeal, the employee admits violating departmental policy but asserts that he should have received less serious discipline or no discipline at all.  We affirm the trial court's decision upholding the employee's two-day suspension.

## **I.**

David E. Kelly has worked for the State of Tennessee for approximately twenty years, the last eleven with the Department of Labor.  He served as the Department's director of management systems until 1993 when he was demoted for poor job performance.[1]  Mr. Kelly continued to work as one of the Department's seven systems analysts and was assigned to the Division of Workers' Compensation.  In addition to his responsibilities to the Division of Workers' Compensation, Mr. Kelly also served as the Department's security administrator and was responsible for controlling access to all of the Department's mainframe computers.

Mr. Kelly's performance evaluations were generally good following his demotion.  However, three incidents occurred between late 1994 and mid-1995 that caused the Department to discipline him.  The first incident involved Mr. Kelly's reluctance to assist newer systems analysts[2] in gaining access to the Department's mainframe computers even though the Commissioner had directed the systems analysts to cooperate with each other. Despite repeated requests between December 1994 and July 1995, Mr. Kelly declined to assist one of the Department's newer

analysts gain needed access to the computer. Mr. Kelly later explained his conduct by stating that he was "totally frustrated with them badgering[3] me to do stuff that was not my job to do."

The second incident reflecting on Mr. Kelly's job performance involved his delay in complying with the Department's human resources director's instructions to clear the hallway near his office. In late 1994, the director instructed Mr. Kelly to clear the hallway of equipment and boxes that had accumulated on the floor, the windowsills, and top of the filing cabinets in violation of the fire code and the Americans with Disabilities Act. By June 1995, Mr. Kelly had removed the items from the floor but had not removed the items from the filing cabinets or windowsills. Mr. Kelly told the director that he would remove the remaining items as soon as he found space and eventually completed the task in September 1995.

The third incident involved Mr. Kelly's unapproved attendance at a four-day educational seminar in July 1995. Mr. Kelly did not notify his superiors that he was attending the seminar and did not obtain prior approval as required by the Department's policy. Mr. Kelly later explained that he "forgot" to follow departmental procedures for obtaining advance approval for training but also stated that he had not attended many seminars because the Department's human resources director "gave me a hassle anytime I asked for a class." Mr. Kelly left the course early without completing it because he was needed at the Department. He later apologized to the acting director of management systems, saying that he "didn't know it was going to be this big a deal. . . . I just forgot to fill out the paperwork. I'm sorry. If it bothers you that much I'll pay for the course myself."

On July 19, 1995, the acting director of management systems asked the Commissioner to suspend Mr. Kelly for three days for violating the Department's policies and for failing to carry out direct instructions. On July 31, 1995, the Commissioner suspended Mr. Kelly from work for three days after taking the three incidents and Mr. Kelly's earlier demotion into consideration. Following an informal hearing presided over by the Department's legal director, the Commissioner

shortened Mr. Kelly's suspension to two days.

Mr. Kelly pursued a Step V grievance to the Tennessee Civil Service Commission. Following a hearing, an administrative law judge employed by the Secretary of State concluded that Mr. Kelly's 1993 demotion should not have been considered and that Mr. Kelly's acts did not constitute insubordination. According, the administrative law judge reduced Mr. Kelly's two-day suspension to an oral warning and awarded him partial attorney's fees. At the Department's request, the Civil Service Commission reviewed the administrative law judge's interim order. While it adopted the administrative law judge's findings of fact, the Commission concluded that the evidence established insubordination and violation of departmental policies. Accordingly, the Commission reinstated Mr. Kelly's two-day suspension and vacated the award of attorney's fees.

Mr. Kelly filed a petition for judicial review in the Chancery Court for Davidson County seeking to overturn the Civil Service Commission's decision. On April 27, 1999, the trial court affirmed the Commission's decision after determining that Mr. Kelly's suspension was not contrary to law, arbitrary or capricious, or unsupported by the evidence. The trial court also rejected Mr. Kelly's argument that the Commission acted arbitrarily and capriciously by considering his 1993 demotion when determining whether his punishment was appropriate. Mr. Kelly now appeals from the trial court's decision.

## II.
### Evidentiary Support for the Suspension

Mr. Kelly's chief argument on this appeal is that the Department failed to present substantial and material evidence that his two-day suspension was warranted. While he does not insist that he was completely blameless, Mr. Kelly asserts that the two-day suspension was too harsh and that either a less harsh punishment or no formal punishment at all would have been warranted. We find that the record

supports the Commissioner's decision.

## A.
## Standard of Review

Judicial review of decisions by the Tennessee Civil Service Commission are governed by the Tennessee Uniform Administrative Procedures Act. *See* Tenn. Code Ann. § 4-5-322(a)(1) (1998). Trial and appellate courts use the same standard of review. *See Ware v. Greene*, 984 S.W.2d 610, 614 (Tenn. Ct. App. 1998); *Estate of Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990). When the factual support for an administrative decision is challenged, the courts must examine the entire record to determine whether the decision is supported by substantial and material evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5) (1998).

The substantial and material evidence standard requires a searching and careful inquiry into the record to determine the basis for the administrative decision. *See Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995); *Wayne County v. Solid Waste Disposal Control Bd.* , 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988). Courts do not reweigh the evidence in these cases, *see Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977); *Jackson Mobilphone Co., Inc. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993), but rather review the record for "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984).

We may not reverse an administrative decision supported by substantial and material evidence solely because the evidence could also support another result. *See Hughes v. Bd. of Comm'rs*, 204 Tenn. 298, 305, 319 S.W.2d 481, 484 (1958); *Metropolitan Gov't of Nashville and Davidson County v. Tennessee Solid Waste*

*Disposal Control Bd.*, 832 S.W.2d 559, 561 (Tenn. Ct. App. 1991). Courts may reject an agency's factual findings only if a reasonable person would necessarily draw a different conclusion from the record. *See Jones v. Greene*, 946 S.W.2d 817, 828 (Tenn. Ct. App. 1996).

**B.**

**The Evidence Against Mr. Kelly**

The state civil service rules permit supervisors to discipline employees " whenever just or legal cause exists." Tenn. Comp. R. & Regs. r. 1120-10-.02 (1988). The record before us contains substantial and material evidence that Mr. Kelly refused to accept reasonable and proper assignments from his superiors,[4] that he failed to maintain satisfactory and harmonious working relationships with his fellow employees,[5] and that he disrupted the normal operation of the Department and interfered with his superiors' ability to manage.[6]

Mr. Kelly did not comply in a timely or cooperative manner with his superiors' repeated requests to assist other systems analysts seeking access to the Department's mainframe computer or to clear the hallway of materials. He also ignored the Department's policy requiring advance approval for training. This conduct reflects the absence of a satisfactory and harmonious relationship between Mr. Kelly and the other systems analysts and the Department's temporary director of management systems. The conduct also caused disruption within the Department because Mr. Kelly's coworkers' efficiency was impaired when they could not gain access to the Department's mainframe computer, and when Mr. Kelly was not available to perform needed work because he was attending training away from the office.

Both the Department's legal counsel and the administrative law judge characterized Mr. Kelly's conduct as "disorganized" and "negligent" rather than insubordinate. However, the record contains substantial and material evidence that

supports both the Department's and the Civil Service Commission's conclusion that Mr. Kelly was insubordinate. His lack of respect for his superiors is reflected in his sarcastic responses when he was questioned about the unauthorized training, in his petulant objections to the "cross-training thing" – his reference to his superiors' direction that the systems analysts work together rather than independently, and in his purposeful delay in carrying out assignments with which he did not agree.

## III.

### The Arbitrariness and Capriciousness of the Suspension

Mr. Kelly also asserts that there are two reasons why the Commissioner's and the Civil Service Commission's decision to suspend him for two days was arbitrary and capricious. First, he argues that his conduct, even if proven by substantial and material evidence, did not warrant such harsh punishment. Second, he insists that the Commissioner and the Civil Service Commission should not have taken his 1993 demotion into account in considering the appropriate discipline for these three offenses.

Courts may modify or overturn a decision by an administrative agency that is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4). This standard of review, while akin to the standard in Tenn. Code Ann. § 4-5-322(h)(5), requires the court to determine whether the administrative agency made a clear error in judgment. *See Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d at 110-11. An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, *see State ex rel Nixon v. McCanless*, 176 Tenn. 352, 354, 141 S.W.2d 885, 886 (1940), or that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion. *See Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d at 111.

Tennessee's civil service statutes and rules incorporate the doctrine of progressive discipline. Accordingly, supervisors are expected to administer discipline beginning at the lowest appropriate step. *See* Tenn. Code Ann. § 8-30-330(a), (c) (1993); Tenn. Comp. R. & Regs. r. 1120-10-.07 (1996). Progressive discipline does not require a supervisor to begin at the lowest level of discipline regardless of the nature of the employee's conduct. It simply means that the supervisor should impose the lowest appropriate punishment taking into account the nature or severity of the employee's behavior. Accordingly, supervisors have the discretion to determine what punishment fits the offense. *See Berning v. State Dep't of Correction*, 996 S.W.2d 828, 830 (Tenn. Ct. App. 1999).

We do not sit as some sort of super Civil Service Commission when we review cases involving the discipline of state employees. Based on Mr. Kelly's conduct, we cannot fault either the Commissioner or the Civil Service Commission for not giving him either an oral or written warning or some other lesser punishment. Nor can we fault the Commissioner for decreasing Mr. Kelly's suspension from three to two days. As one member of the Civil Service Commission observed, Mr. Kelly was "lucky to get by with a two day suspension." Based on the evidence in this record, we decline to conclude that Mr. Kelly's supervisors abused their discretion by setting his punishment at a two-day suspension.

Likewise, we decline to find that either the Commissioner or the Civil Service Commission acted arbitrarily or capriciously by arriving at Mr. Kelly's discipline in light of his entire work history, including his 1993 demotion. While prior disciplinary actions have no bearing on whether an employee has engaged in work-related conduct that warrants discipline, an employee's prior conduct, both good and bad, can be considered when determining what the appropriate disciplinary action should be. *See Tennessee Dep't of Human Servs. v. Mahon*, No. 01A01-9504-CH-00143, 1995 WL 581086, at *4 (Tenn. Ct. App. Oct. 5, 1995) (No Tenn. R. App. P. 11 application filed) (citing the employee's "long history of progressive discipline coupled with no overall improvement"); *Memphis & Shelby County Health Dep't v.*

*Bailey*, Shelby Eq., slip op. at 3 (Tenn. Ct. App. Dec. 6, 1984) (No Tenn. R. App. P. 11 application filed) (stating that an employee's prior record was admissible in determining punishment once the fact of the employee's conduct has been settled).

The administrative law judge permitted Mr. Kelly to, in effect, collaterally attack the validity of his 1993 demotion. In its order upholding the two-day suspension, the Civil Service Commission expressly held that "both the Administrative Law Judge's decision to admit evidence on the Grievant's 1993 disciplinary demotion which was not grieved and the Administrative Law Judge's decision that the demotion could not be relied upon as a prior act of progressive discipline constitute reversible error in this action." We agree with the Civil Service Commission's conclusion on these issues.

## IV.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to David E. Kelly and his surety for which execution, if necessary, may issue.

_____
          WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

_____
WILLIAM B. CAIN, JUDGE